UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

BOBBY BELLARD, CRAIG MESSICK, and
BARBRA SPEER,

        *Plaintiffs*,

        v.

THE UNIVERSITY OF TEXAS MD
ANDERSON CANCER CENTER,

        *Defendant*.

Civil Action No.: 3:22-cv-88

## COMPLAINT

Plaintiffs Bobby Bellard, M.D., Craig Messick, M.D., and Barbra Speer, D.O., (collectively "Plaintiffs"), by and through the undersigned attorneys, complain as follows against Defendant, the University of Texas MD Anderson Cancer Center.

## INTRODUCTION

1. The First Amendment to the Constitution of the United States guarantees the free exercise of religion. U.S. CONST. amend. I, cl. 2. The Free Exercise Clause applies to the States through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303–04 (1940). The Supreme Court has held that "the 'exercise of religion' often involves not only belief and profession but the performance of (or abstention from) physical acts." *Employment Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990).

2. University of Texas MD Anderson Cancer Center ("MDA"), which as part of the University of Texas is a state actor subject to the First Amendment, issued a mandate

that all employees must receive a COVID-19 vaccine unless granted an exemption. Despite granting both secular and religious exemptions to various employees—including employees with job descriptions similar to those of the Plaintiffs—MDA denied exemptions to each of these three doctors who requested a religious exemption based on their pro-life beliefs, violating the rights afforded to them by the Constitution and federal law.

3. Plaintiffs bring this suit as a civil rights action under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

## PARTIES

4. Plaintiff Bobby Bellard is an anesthesiologist employed by MDA. He performs his job duties at the MDA facility in Houston, in the Southern District of Texas. He also resides in the Southern District of Texas.

5. Plaintiff Craig Messick is a surgeon employed by TDA. He performs most of his job duties at the MDA facility in Houston, and the remainder at the MDA facility in Sugar Land, Texas, both of which are in the Southern District of Texas. He also resides in the Southern District of Texas.

6. Plaintiff Barbra Speer is an anesthesiologist employed by MDA. She performs her job duties at the MDA facility in Houston, in the Southern District of Texas. She also resides in the Southern District of Texas.

7. Defendant University of Texas MD Anderson Cancer Center is a component of the University of Texas, which is part of the government of the State of Texas, and therefore is a state actor. Plaintiffs work at MDA facilities in Houston and Sugar Land,

2

both in the Southern District of Texas. Defendant MDA is an entity that functions through its various governing bodies, officers, and employees. Those individuals are encompassed here as constituent elements of MDA to the extent that their individual actions caused Plaintiffs' injuries and their compliance with an injunction or facilitating the payment of damages would redress Plaintiffs' injuries.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5(f)(3).

9. This Court has authority to award Plaintiffs' requested declaratory relief under 28 U.S.C. §§ 2201–02, the requested injunctive relief under 28 U.S.C. § 1343 and 42 U.S.C. § 2000e-5(g), and the requested monetary relief under 28 U.S.C. § 1343 and 42 U.S.C. §§ 1988, 2000e-5(g), 2000e-5(k).

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) both because the Defendant is domiciled in this District, insofar as its corporate offices and all of its relevant facilities are located in this District, and a substantial part of the events complained of herein occurred in this District.

## FACTUAL ALLEGATIONS

11. On November 4, 2021, the Centers for Medicare and Medicaid Services ("CMS") issued an Interim Final Rule ("IFR"), *Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination*, 86 Fed. Reg. 61555 (Nov. 5, 2021). In the IFR, the Secretary of Health and Human Services "announced that, in order to receive Medicare and Medicaid funding, participating facilities must ensure that their

staff—unless exempt for medical or religious reasons—are vaccinated against COVID-19." *Biden v. Missouri*, 142 S. Ct. 647, 650 (2022) (per curiam).

12.     On November 5, 2021, MDA President Peter Pisters sent an email to MDA staff informing them that MDA was issuing a COVID-19 vaccine mandate to comply with the IFR, and advising them that additional information on compliance requirements would be forthcoming.  This was followed on November 11, 2021 with an informational town hall, and a subsequent email from Dr. Pisters on November 12, 2021 providing additional information.

13.     Also on November 12, 2021, MDA sent each Plaintiff an email informing each Plaintiff that because their vaccine documentation had not been submitted they were therefore not in compliance with the mandate, and setting forth the timeline by which compliance was required to avoid adverse action.

14.     The deadline by which MDA employees were required to comply with MDA's vaccine mandate was delayed and then rescheduled as a result of the litigation challenging CMS's IFR.  Subsequent to the Supreme Court's January 13, 2022, decision on the IFR in *Biden v. Missouri*, MDA sent a group email on January 25, 2022, advising Plaintiffs that unless they received an exemption for religious or other reasons, they must receive a COVID-19 vaccine by February 22, 2022, or be placed on administrative leave.

15.     Each Plaintiff has a faith-based objection to receiving a COVID-19 vaccine. Dr. Bellard is Roman Catholic and Drs. Messick and Speer are Evangelical Christians. They all believe that abortion is sinful and contrary to God's will.  Drs. Bellard and Speer believe the use of fetal cells in the development of COVID-19 vaccines means that to

4

receive the vaccine would make them complicit in the evil of abortion. Dr. Messick believes he was moved by the Holy Spirit to conclude that the COVID-19 vaccine was not right for him at this time given his symptoms when he had COVID-19. For all three Plaintiffs, taking the vaccine would be a violation of their sincerely held religious beliefs.

16. Dr. Bellard has worked at MDA for more than 10 years. Dr. Bellard requested a religious exemption because of his pro-life beliefs on November 11, 2021, as a reasonable accommodation of his sincerely held religious beliefs. MDA denied that request on November 22, 2021. Dr. Bellard again requested a religious exemption because of his pro-life beliefs on February 9, 2022. MDA denied that request on February 14, 2022, without explanation or an opportunity to appeal.

17. As a consequence of that denial, on February 21, 2022, Defendant informed Dr. Bellard that his employment contract with MDA would not be renewed for the year beginning September 1, 2022.

18. Also as a consequence, on February 23, 2022, Defendant placed Dr. Bellard on administrative leave, stripping him of his medical privileges and access to his facility and accounts.

19. Dr. Messick has worked at MDA for more than nine years. Dr. Messick requested a religious exemption because of his pro-life beliefs on November 19, 2021, as a reasonable accommodation of his sincerely held religious beliefs. Defendant denied him a religious exemption on February 8, 2022, without explanation or an opportunity to appeal.

20. As a consequence of that denial, on February 21, 2022, Defendant informed Dr. Messick that his employment contract with MDA would not be renewed for the year beginning September 1, 2022.

21. Also as a consequence, on February 23, 2022, Defendant placed Dr. Messick on administrative leave, stripping him of his medical privileges and access to his facility and accounts.

22. Dr. Speer has worked at MDA for more than nine years. Dr. Speer requested a religious exemption because of her pro-life beliefs on November 12, 2021, as a reasonable accommodation of her sincerely held religious beliefs. Defendant denied that request on November 23, 2021. Dr. Speer again requested a religious exemption on January 28, 2022. MDA denied that request on February 8, 2022, without explanation or an opportunity to appeal.

23. As a consequence of that denial, on February 21, 2022, Defendant informed Dr. Speer that her employment contract with MDA would not be renewed for the year beginning September 1, 2022.

24. Also as a consequence, on February 23, 2022, Defendant placed Dr. Speer on administrative leave, stripping her of her medical privileges and access to her facility and accounts.

25. The denial of a religious exemption is a final action by MDA, and is not subject to administrative appeal. Some injuries to Plaintiffs' legal rights were complete upon the issuance of that denial, others upon of the notice of non-renewal, and the others upon being placed on administrative leave.

26. MDA sent an email on March 15, 2022, to those staff who had been denied a religious exemption, advising them that those denials would be reconsidered in the near future. No assurances were given that any previously denied exemptions would be granted after this reconsideration, but the email stated that any employees who receive an exemption in the near future will be reinstated to active status from their current administrative leave status. A subsequent March 16, 2022, email added that the notice of non-renewal for the coming year's employment contract would be reconsidered if, before April 20, 2022, an employee either gets vaccinated or is approved for a religious exemption. MDA again gave no assurances that any previously denied exemptions would be granted in the future.

## COUNT I
## First Amendment—Free Exercise Clause
## 42 U.S.C. § 1983

27. Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

28. Plaintiffs Bellard, Messick, and Speer hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

29. Plaintiffs Bellard, Messick, and Speer informed MDA of those beliefs and requested religious exemptions from the vaccine mandate.

30. MDA denied those requests, infringing upon Plaintiffs' religious beliefs.

31. MDA's failure to provide a religious exemption has harmed and will continue to harm Plaintiffs.

32. "'The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury.'" *Opulent Life Church v. City of Holly*

*Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)).

33. Regarding the religious liberty implications of a COVD-19 vaccine mandate, the Fifth Circuit has held, "By pitting their consciences against their livelihoods, the vaccine requirements would crush Plaintiffs' free exercise of religion." *U.S. Navy SEALs 1–26 v. Biden*, No. 22-10077, 2022 WL 594375, at *9 (5th Cir. Feb. 28, 2022) (per curiam).

34. MDA's vaccine mandate is not a generally applicable government action because it allows for individualized exemptions. *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021).

35. Because it is not a government action of general application, MDA's vaccine mandate violates the Free Exercise Clause unless it satisfies strict scrutiny. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 537–38, 546 (1993).

36. Under strict scrutiny, the government's challenged policies are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

37. To satisfy strict scrutiny, MDA must prove its case by a "strong basis in evidence." *See, e.g.*, *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500 (1989).

38. MDA does not have a compelling interest in forcing Dr. Bellard, Dr. Messick, or Dr. Speer to get a COVID-19 vaccine. "Rather than rely on broadly formulated interests, courts must scrutinize the asserted harm of granting specific exemptions to particular religious claimants." *Fulton*, 141 S. Ct. at 1881 (cleaned up). MDA has never

explained why it has a compelling interest in forcing any one of these three physicians to receive the vaccine.

39. MDA's vaccine mandate is not narrowly tailored. Regarding COVID-19 mandates:

> narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID. Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too.

*Tandon v. Newsom*, 141 S. Ct. 1294, 1296–97 (2021) (per curiam). As such, MDA's vaccine mandate violates Plaintiffs' rights under the Free Exercise Clause.

### COUNT II
### First Amendment—Unconstitutional Conditions Doctrine
### 42 U.S.C. § 1983

40. Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

41. Physicians at MDA such as Plaintiffs work on recurring one-year employment contracts.

42. The general pattern and practice at MDA is that if a physician's performance is sufficient, MDA offers to renew that physician's contract.

43. Each Plaintiff has worked at MDA for at least nine years, and all three are accustomed to having their contracts renewed without incident or qualification.

44. All three Plaintiffs received high marks on their most recent annual review, and accordingly expected their contracts to be renewed again this year.

45. After MDA denied Plaintiffs' religious exemptions, MDA also informed Plaintiffs that their current contracts, ending August 31, 2022, would not be renewed for the following year.

46. This non-renewal is due to Plaintiffs' not receiving a COVID-19 vaccine that would violate their religious beliefs.

47. Under the unconstitutional conditions doctrine, the government may not deny a benefit to a person on a basis that violates his constitutionally protected rights, even if he was not entitled to that benefit. *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 59 (2006). The unconstitutional conditions doctrine "forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013).

48. Had Plaintiffs not exercised their enumerated rights under the Free Exercise Clause, their contracts would have been renewed.

49. MDA's failure to provide a notice of renewal has harmed and will continue to harm Plaintiffs.

50. For these reasons, MDA's notice of non-renewal to Plaintiffs violates the unconstitutional conditions doctrine.

51. For these reasons, MDA's notice of non-renewal to Plaintiffs violates the unconstitutional conditions doctrine.

## COUNT III
### Fourteenth Amendment—Due Process Clause
### 42 U.S.C. § 1983

52. Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

53. The Due Process Clause of the Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1, cl. 3.

54. Plaintiffs had a liberty interest in the free exercise of their religion that is protected by the Due Process Clause.

55. Defendant deprived Plaintiffs of last liberty interest.

56. Defendant did so without affording Plaintiffs due process because Defendant never explained why the religious exemption request was denied or gave Plaintiffs the opportunity to convince Defendant that Defendant's reason for denying the exemption was wrong. *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 318 (D.C. Cir. 2014); *see also Greene v. McElroy*, 360 U.S. 474, 496 (1959); *Woolsey v. Nat'l Transp. Safety Bd.*, 993 F.2d 516, 521 (5th Cir. 1993); *Robbins v. U.S. R.R. Ret. Bd.*, 594 F.2d 448, 451 (5th Cir. 1979).

57. Plaintiffs had property interests under Texas law that are protected by the Due Process Clause.

58. Defendant deprived Plaintiffs of those property interests.

59. Defendant did so without affording Plaintiffs due process because Defendant never explained why the religious exemption request was denied or gave Plaintiffs the

opportunity to convince Defendant that Defendant's reason for denying the exemption was wrong. *Ralls Corp.*, 758 F.3d at 318.

## COUNT IV
### Fourteenth Amendment—Equal Protection Clause
### 42 U.S.C. § 1983

60. Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

61. The Equal Protection Clause of the Fourteenth Amendment, U.S. CONST. amend. XIV, § 1, cl. 4, guarantees Plaintiffs equal protection of the laws, "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

62. When a government action resulting in an equal-protection claim interferes with the exercise of a fundamental right, the government must satisfy strict scrutiny. *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 350 (5th Cir. 2013).

63. The free exercise of religion is a fundamental right. *Wisconsin v. Yoder*, 406 U.S. 205, 214 (1972).

64. Several MDA employees who received a religious exemption from receiving the COVID-19 vaccine are similarly situated to Plaintiffs. They share a faith-based objection to the vaccine, have similar interactions with coworkers and patients, and thus are at similar risk of contracting and spreading COVID-19. One colleague in particular who received an exemption is an anesthesiologist like Drs. Bellard and Speer, working in the same offices and operating rooms, performing the same job duties, in the same proximity to coworkers and patients, and thus is indistinguishable from Drs. Bellard and

Speer in every material respect with regards to receiving an exemption from MDA's vaccine mandate.

65. Plaintiffs were denied equal protection under the law when MDA denied them a religious exemption from the mandate to receive a COVID-19 vaccine, when similarly situated employees were granted an exemption.

66. MDA's treating Plaintiffs differently than similarly situated MDA employees has harmed and will continue to harm Plaintiffs.

## COUNT V
## Violation of Title VII
## 42 U.S.C. § 2000e *et seq.*

67. Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

68. Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. § 2000e *et seq.*, prohibits employers from discriminating against employees on the basis of religion. *Id.* § 2000e-2(a)(1). As amended, this protection extends against state employers in addition to private employers, as an exercise of Congress' authority under Section 5 of the Fourteenth Amendment to enact legislation abrogating States' Eleventh Amendment sovereign immunity. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 n.1 (5th Cir. 2002).

69. MDA is required "to reasonably accommodate" its employees' religious beliefs, meaning MDA must accommodate a "religious observance or practice without undue hardship on the conduct of" MDA's operations. 42 U.S.C. § 2000e(j).

70. Plaintiffs requested that MDA grant them a religious exemption from the mandate to receive a COVID-19 vaccine as a reasonable accommodation of Plaintiffs' sincerely held religious beliefs.

71. MDA refused to engage in an interactive process with Plaintiffs regarding their religious accommodation requests, and instead required Plaintiffs to answer questions designed to deter Plaintiffs from exercising their religious beliefs.

72. Regardless of the lack of interactive process, MDA failed to provide Plaintiffs with reasonable accommodations for their religious beliefs, because being placed on administrative leave, to be followed by non-renewal, is not a reasonable accommodation. Instead, these are adverse employment actions.

73. MDA thereby discriminated against Plaintiffs because of their religious beliefs.

74. MDA's failure to provide religious accommodations has harmed and will continue to harm Plaintiffs.

75. On March 17, 2022, Plaintiffs filed charges with the EEOC complaining of these discriminatory actions. Those charges are currently pending.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court issue an order and judgment:

a. Declaring that MDA's denial of religious exemptions to Plaintiffs violates the Free Exercise Clause as applicable through the Fourteenth Amendment;

b. Declaring that MDA's stripping Plaintiffs of their medical privileges and access to their facilities, as well as MDA's non-renewal of Plaintiffs' contracts, due to their

refusal to forfeit their First Amendment rights violates the unconstitutional conditions doctrine;

 c. Declaring that MDA's denying Plaintiffs' requests for a religious exemption without any explanation or opportunity to persuade MDA that MDA's decision was wrong violates the Fourteenth Amendment Due Process Clause;

 d. Declaring that MDA's treating Plaintiffs differently than similarly situated MDA employees violates the Fourteenth Amendment Equal Protection Clause;

 e. Declare that MDA has violated Title VII by failing to provide Plaintiffs reasonable accommodations to its COVID-19 vaccine mandate;

 f. Enjoining MDA through a preliminary injunction, to be succeeded by a permanent injunction, preventing MDA from enforcing its vaccine mandate against Plaintiffs, and requiring MDA to: (i) restore Plaintiffs to active status at their previous MDA positions, with all attendant rights and privileges, through the end of their current annual contract; and (ii) offer to renew the contract for the next annual period beginning September 1, 2022;

 g. Enjoin MDA in a permanent injunction to grant reasonable accommodations as required by federal law;

 h. Award damages—whether nominal, compensatory, or other—for violations of Plaintiffs' First Amendment rights in Counts I–II and Fourteenth Amendment rights in Counts III–IV.

 i. Award any damages due from the Title VII religious discrimination violation in Count V;

j.      Award reasonable attorneys' fees and costs; and

k.      Grant any other relief that the Court deems just, proper, and equitable.

March 18, 2022

Respectfully submitted,

*/s/ Kenneth A. Klukowski*
Kenneth A. Klukowski
*Attorney-in-Charge for Plaintiffs*
D.C. Bar No. 1046093
S.D. Texas Bar No. 3145314
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel: (202) 787-1060
Facsimile: (202) 776-0136
kklukowski@schaerr-jaffe.com

*Counsel for Plaintiffs*