The Honorable Jeffrey V. Brown
Galveston Division Courthouse
601 Rosenberg, Room 613
Galveston, TX 77550


   Re: *Bobby Bellard, et al. v. The University of Texas MD Anderson Cancer*
     *Center et al.*,
     Civil Action No. 3:22-cv-88,
     Joint Discovery Letter Regarding Plaintiffs' Discovery Responses


Dear Judge Brown:

   Pursuant to Galveston District Court Rule of Practice No. 7, the parties in the above-captioned case submit this joint letter regarding an ongoing discovery dispute. In specific, the parties are at odds over the production of: (1) Plaintiff Speer's religious notes and journals; and (2) the content and identities of participants in the "MDA Fight Back Chat" Telegram Chat.[1]

## Background

   Defendants served each Plaintiff with an initial set of Requests for Production on December 15, 2022. (*See* Ex. A.) Plaintiffs produced documents in response on January 18, 2023. In line with the requirements of Galveston District Court Rule of Practice No. 7, Defendants sent conferral letters to Plaintiffs on January 24 and February 6, 2023 alleging deficiencies in the January 18, 2023 production. (*See* Ex. B.) Among other things, Defendants contend Plaintiffs failed to produce: (1) Drs. Speer's and Bellard's notes and journals about their religious faiths during the relevant time period and (2) responsive communications between Plaintiffs, and with third parties.

   On the first point, Plaintiffs responded that notes and journals detailing their religious faiths are irrelevant because Plaintiffs' argue sincerity of beliefs is not in question. (*Id.*) Defendants disagreed and asserted that the notes and journals are directly relevant to the sincerity of Plaintiffs' beliefs, an essential element of Plaintiffs' claims. (*Id.*) The parties have since engaged in extensive conferral on this point (*see id.*), and while Plaintiffs eventually produced Dr. Bellard's minimal religious notes and journals, they continue to withhold Dr. Speer's responsive documents.

   On the second issue, Plaintiffs eventually produced a heavily redacted copy of a Telegram chat, created in November 2021, among Plaintiffs and approximately 25–30 other MD Anderson employees—entitled "MDA Fight Back Chat" ("the Chat").[2] The version produced deleted all

---

[1] This Joint Letter addresses just two discovery disputes between the parties. However, the parties would like to note that additional discovery disputes—beyond those addressed herein—are ongoing between the parties. Pursuant to Galveston District Court Rules of Practice No. 7, the parties intend to begin or continue attempts at resolution as to these additional disputes before seeking the Court's intervention.

[2] Telegram is an app-based messaging platform that permits messaging among large groups. The produced file spans 142 bates stamped pages, and as such, only a representative excerpt is attached to this letter as Exhibit C.

account names aside from Plaintiffs and redacted all messages aside from those sent by Plaintiffs. Plaintiffs assert that the withheld information is protected by First Amendment privilege.

### Defendants' Summarized Position

Dr. Speer's religious notes and journals are relevant and responsive to Defendants' requests. To establish religious discrimination, a plaintiff must affirmatively prove that her religious beliefs are sincerely held. *See, e.g.*, *Tagore v. U.S.*, 735 F.3d 324, 328 (5th Cir. 2013). Contemporaneous notes and journals reflecting a plaintiff's religious faith are indisputably relevant to the issue of sincerity, and the question of sincerity is a fundamental element of each Plaintiff's Title VII claim, as well as relevant to their claims under §1983. Whether Defendants questioned the sincerity of Dr. Speer's religious beliefs when evaluating her exemption request has no bearing on her obligation to affirmatively prove this element at trial. Plaintiffs have no legitimate basis to withhold this relevant, and repeatedly requested, evidence.

Moreover, the qualified First Amendment privilege does not extend to the identities of Chat participants or to the content of their messages. That the Chat allegedly "touches on a matter of public concern" does not mean that Plaintiffs may withhold it under the guise of privilege. Plaintiffs have not and cannot show how providing the withheld information will hinder the exercise of associational rights in the future. *La Union Del Pueblo Entero v. Abbot*, No. SA-21-CV-00844-XR, 2022 QL 17574079, at *6 (W.D. Tex. Dec. 9, 2022). Thus, Plaintiffs must, at the very least, produce an <u>unredacted</u> version of the produced Chat.[3]

### Plaintiffs' Summarized Position

Dr. Speer's private prayer journal contains her personal thoughts and prayers for her family and other private matters, not related to this lawsuit other than occasional prayers for parties. Defendants did not question the sincerity of Dr. Speer's religious beliefs when she requested an accommodation. Per EEOC guidance, employers must accept the sincerity of employees' expressed religious beliefs absent an objective basis for questioning those beliefs,[4] which Defendants lack.  There is no need to read Dr. Speer's personal prayers.

Plaintiffs' comments made in the Chat have been provided. The identity and comments of *other employees* of this state actor are both irrelevant and protected First Amendment speech.  The Chat was invitation-only. The First Amendment protects against compelled disclosure of this group. *See NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460–61 (1957). Disclosing nonparties' names and speech would chill protected speech. *See Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383–84 (2021). Some nonparties subpoenaed by Defendants for such communications have already expressed that, as a result of Defendants' actions, they will refrain from communicating with Plaintiffs and other MD Anderson employee about these issues (*see* Exhibit E). Accordingly, Plaintiffs seek both the denial of Defendants' motion and a protective order to prohibit further demands upon third parties who participated in the Chat.  These issues were outlined to Defendants in letters dated March 17 and 28, 2023 (*see* Exhibits F and G).

---

[3] Defendants respectfully disagree with the position stated in Exhibit E and to the extent it is considered by the Court, request an opportunity fully brief the issue. In the meantime, Defendants refer the Court to Exhibit D for added context.
[4] *See* EEOC Guidance on Religious Discrimination § 12-IV.A.2.

Dated: March 31, 2023

Respectfully submitted,

*/s/ Carrie B. Hoffman*
Carrie B. Hoffman
Texas Bar No. 00787701
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
(214) 999-3000
choffman@foley.com

Jessica Glatzer Mason
Federal ID No. 617542
Foley & Lardner LLP
1000 Louisiana Street, Suite 2000
Houston, Texas 77002
(713) 276-5500
jmason@foley.com

Brooke Bahlinger
TX Bar No. 24116056
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
(214) 999-4031
bbahlinger@foley.com

**ATTORNEYS FOR DEFENDANTS**


*/s/ Kenneth A. Klukowski*
Mark R. Paoletta*
D.C. Bar No. 422746
H. Christopher Bartolomucci*
D.C. Bar No. 453423
Kenneth A. Klukowski
 *Attorney-in-Charge*
D.C. Bar No. 1046093
S.D. Bar No. 3145314
Edward H. Trent*
Fla. Bar No. 0957186
Cristina Martinez Squiers*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900

Washington, DC 20006
Tel: (202) 787-1060
Facsimile: (202) 776-0136
kklukowski@schaerr-jaffe.com

***Counsel for Plaintiffs***

*Admitted *pro hac vice*

# Exhibit A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| Bobby Bellard, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.3:22−cv−88 |
| | § | |
| The University Of Texas MD Anderson | § | |
| Cancer Center, et. al | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' FIRST REQUESTS FOR PRODUCTION
## TO PLAINTIFF BOBBY BELLARD

To:    Plaintiff, Bobby Bellard, by and through his attorney of record, Kenneth A. Klukowski, Shaerr Jaffe LLP, 1717 K Street NW, Suite 900, Washington, DC 20006

Defendants The University of Texas MD Anderson Cancer Center, Peter W.T. Pisters, Rosanna Morris, Carin Hagberg, Welela Tereffe, Roy Chemaly and Shibu Varghese ("Defendants") serve their First Request for Production on Plaintiff Bobby Bellard ("Bellard").

Responses to these requests are due within **thirty (30) calendar days of service** of this request.

## INSTRUCTIONS

1.  You are required by the Federal Rules of Civil Procedure to respond to this Request for Production in writing and produce all responsive documents with Bates labels.

2.  If, after you have responded to this Request for Production, you discover or locate responsive documents that you did not produce, you must supplement your responses and produce the supplemental documents.

## DEFINITIONS

1.      "All other terms are to be interpreted in accordance with their normal usage in the English language.

2.      As used herein, "**Person**" means natural person(s), corporation(s), partnership(s), sole proprietorship(s), union(s), association(s), federation(s), or any other kind of entity.

3.      As used herein, "**Defendants**" means Defendants The University of Texas MD Anderson Cancer Center, Peter W.T. Pisters, Rosanna Morris, Carin Hagberg, Welela Tereffe, Roy Chemaly, and Shibu Varghese.

4.      As used herein, "**Cancer Center**" means Defendant, The University of Texas MD Anderson Cancer Center.

5.      As used herein, "**Individual Defendants**" means Defendants Peter W.T. Pisters, Rosanna Morris, Carin Hagberg, Welela Tereffe, Roy Chemaly, Shibu Varghese and John Does 1-5.

6.      As used herein, "**Plaintiffs**," means Bobby Bellard, Craig Messick and/or Barbra Speer both individually and collectively including all representatives of Plaintiffs acting or purporting to act on their behalf.

7.      "**You**" or "**Your**" means Bobby Bellard both individually and collectively including all representatives of Bellard acting or purporting to act on his behalf.

8.      As used herein, "**Vaccine Policy**" means the vaccine policy Plaintiffs reference in the Verified Third Amended Complaint.

9.      "The term "**Document**" is used in its broadest possible sense and shall include, but not be limited to, any kind of written, printed, typed, electronically created, or stored; and other graphic matter of any type, documentary material, and drafts thereof, including, but not limited to, any correspondence, memoranda, interoffice or intra-office communications, notes, diaries, journals, calendars, contract documents, publications, calculations, estimates, vouchers, minutes of meetings, invoices, reports, studies, computer tapes, computer disks, computer cards, computer files, emails, photographs, negatives, slides, dictation belts, voice tapes, telegrams, notes of telephone conversations, and notes evidencing all Communications (defined below), including those made orally.

10.     The term "**Communication**" is used in its broadest possible sense and shall include, but not be limited to, any oral, written or electronic transmission of information among or between individuals and to oneself and includes, without limitation, meetings, discussions, conversations, telephone calls, electronic and instant messages, text messages, memoranda, letters, telecopies, email messages, conferences, seminars, or notes.

11.     The term "**Person**" refers to any individual, corporation, general partnership, limited partnership, joint venture, association, joint-stock company, trust, incorporated organization, government or political subdivision thereof, and any other non-natural person of whatever nature.

12.     The term "**all**" includes and encompasses "**any**."  The term "**any**" includes and encompasses "**all**."

13.     The term "**or**" includes and encompasses "**and**."  The term "**and**" includes and encompasses "**or**."

14.     The term "**Lawsuit**" means *Bobby Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et. al.*, Civil Action No. 3:22-cv-88 in the United States District Court Southern District of Texas Galveston Division.

15.     The term "**Date**" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

16.     The term "**Social Media**" means any internet-based social or networking website or webpages where people create, share, or exchange information or ideas over the internet. Social media includes but is not limited to, Bit Chute, Gab, Gettr, Parler, Rumble, Telegram, Truth Social, MeWe, Zello, LinkedIn, Facebook, Twitter, Pinterest, Google Plus, Instagram, Yelp, Flickr, YouTube, Word Press, Blogger, Blogspot, TikTok, Tumblr, Reddit, etc.

17.     The terms "**Post**," "**Posting**," "**Posted**," "**Upload**," "**Uploading**," or "**Uploaded**" means to create or place entry on a social media site, regardless of whether that entry is available to the general public or the entry is an original post, sharing other content, or commenting on another's post.

18.     The phrases "**Relate To**," "**Related To**," and "**Relating To**," or any variant thereof, include, but are not limited to, the following meanings:  referring to, supporting, located in, considered in connection with, bearing, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, concerning, opposing, favoring, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, reflecting, analyzing, constituting and being.

19.     In order to bring within the scope of this Request for Production any information that might otherwise be construed to be outside their scope:

a. the terms "and" as well as "or" shall be construed either disjunctively or conjunctively, as necessary;

b. the term "each" shall be construed to include "every" and vice versa;

c. the present tense shall be construed to include the past tense and vice versa; and

d. the singular of each word shall be construed to include its plural and vice versa.

20. Each draft, original, and non-identical duplicate, whether different from the original because of marginal notes or other material inserted therein or attached thereto or otherwise, and all writings, records, documents and data compilations from which the information requested can be obtained or translated, that are in the possession, custody, or control of the party to whom this request is addressed shall be produced. In any instance in which this request names documents for production, it will be acceptable to provide a legible, true, and correct photocopy or other reproduction of the complete document named.

21. The timeframe for this Request for Production is January 1, 2020 to the present unless otherwise stated.

22. Plaintiff's counsel is invited to promptly notify Defendant's counsel of any difficulties it may have interpreting this Request for Production so as to facilitate just, speedy, and efficient responses.

## REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION 1.**        Produce all Communications to and/or from You, including drafts, that relate to the COVID-19 testing alleged in Paragraphs 87-88 of Plaintiffs' Verified Third Amended Complaint.

**REQUEST FOR PRODUCTION 2.**        Produce all Documents, including drafts, that relate to the COVID-19 testing alleged in Paragraphs 87-88 of Plaintiffs' Verified Third Amended Complaint.

**REQUEST FOR PRODUCTION 3.**        Produce all Documents and Communications relating to Cancer Center's reimbursement of payment to You for the COVID-19 test referenced in Paragraphs 87-88 of Plaintiffs' Verified Third Amended Complaint.

**REQUEST FOR PRODUCTION 4.**        Produce all Documents and Communications relating to Your request for reimbursement of payment for the COVID-19 test referenced in Paragraphs 87-88 of Plaintiffs' Verified Third Amended Complaint.

**REQUEST FOR PRODUCTION 5.**        Produce all Documents and Communications relating to Cancer Center's response to Your request for reimbursement of payment for the COVID-19 test referenced in Paragraphs 87-88 of Plaintiffs' Verified Third Amended Complaint.

**REQUEST FOR PRODUCTION 6.**        Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to Cancer Center's Vaccine Policy as referenced in Plaintiffs' Verified Third Amended Complaint.

**REQUEST FOR PRODUCTION 7.**        Produce all Documents, Communications, and Social Media Postings to, from and/or Posted by You from any account that relate to any requests for exemptions and/or accommodations You requested, including any approval of said requests.

**REQUEST FOR PRODUCTION 8.**        Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that evidence Your faith from December 2019 through the present, specifically Your faith-based objection to Cancer Center's Vaccine Policy.

**REQUEST FOR PRODUCTION 9.**        Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to masks from December 2019 through the present.

**REQUEST FOR PRODUCTION 10.**        Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to vaccinations from December 2019 through the present.

**REQUEST FOR PRODUCTION 11.**        Please produce all Documents, Social Media Postings, and Communications that evidence any animus of Cancer Center towards You.

**REQUEST FOR PRODUCTION 12.**     Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to COVID-19 vaccinations from December 2019 through the present.

**REQUEST FOR PRODUCTION 13.**     Produce all Social Media Postings Posted by You from any account that relate to COVID-19 from December 2019 through the present.

**REQUEST FOR PRODUCTION 14.**     Produce all Social Media Postings Posted by You from any account that relate to masking as a mitigation effort against the spread of COVID-19 from December 2019 through the present.

**REQUEST FOR PRODUCTION 15.**     Produce all Social Media Postings Posted by You from any account that relate to testing as a mitigation effort against the spread of COVID-19 from December 2019 through the present.

**REQUEST FOR PRODUCTION 16.**     Please produce all Documents, Social Media Postings, and Communications that evidence any ill will of Cancer Center towards You.

**REQUEST FOR PRODUCTION 17.**     Please produce all Documents, Social Media Postings, and Communications regarding Your religious beliefs and COVID-19 testing.

**REQUEST FOR PRODUCTION 18.**     Please produce all Documents, Social Media Postings, and Communications regarding Your religious beliefs and masking.

**REQUEST FOR PRODUCTION 19.**     Please produce all Documents, Social Media Postings, and Communications regarding Your religious beliefs and COVID-19 vaccines.

**REQUEST FOR PRODUCTION 20.**     Please produce all Documents, Social Media Postings, and Communications from all medical-based resources that informed Your disagreement with Cancer Center's COVID-19 testing policies and practices.

**REQUEST FOR PRODUCTION 21.**     Please produce all Documents, Social Media Postings, and Communications from all medical-based resources that informed Your disagreement with Cancer Center's facemask policies and practices.

**REQUEST FOR PRODUCTION 22.**     Please produce all Documents, Social Media Postings, and Communications from all medical-based resources that informed Your decision regarding the COVID-19 vaccine.

**REQUEST FOR PRODUCTION 23.**     Please produce all Documents, Social Media Postings, and Communications from all religious-based resources that informed your disagreement with Cancer Center's COVID-19 testing policies and practices.

**REQUEST FOR PRODUCTION 24.**     Please produce all Documents, Social Media Postings, and Communications from all religious-based resources you follow relating to the COVID-19 vaccine.

**REQUEST FOR PRODUCTION 25.**     Please produce all Documents, Social Media Postings, and Communications from all religious-based resources that informed your decision regarding the COVID-19 vaccine.

**REQUEST FOR PRODUCTION 26.**     Please produce all Documents, Social Media Postings, and Communications from all religious-based resources that informed your disagreement with Cancer Center's facemask policies and practices.

**REQUEST FOR PRODUCTION 27.**     Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that allegedly evidence that Defendants substantially burdened Your ability to observe Your religious activity.

**REQUEST FOR PRODUCTION 28.**     Produce all Documents and Communications that relate to and/or evidence employment contracts between You and Cancer Center in the last five years.

**REQUEST FOR PRODUCTION 29.**     Produce all Communications to, from and/or concerning You that You sent to and/or received from the Individual Defendants related to the Vaccine Policy from November 2021 through the present.

**REQUEST FOR PRODUCTION 30.**     Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to any requests for exemptions and/or accommodations other employees requested in relation to Cancer Center's Vaccine Policy but that are in Your possession, custody or control.

**REQUEST FOR PRODUCTION 31.**     Produce all Documents, Communications, and Social Media Postings relating to employees who You reference in Paragraph 140 of the Verified Third Amended Complaint.

**REQUEST FOR PRODUCTION 32.**     Produce all Documents, Communications, and Social Media Postings relating to or referencing any complaints or reports of discrimination that You allegedly made to Defendants from November 2021 through the present.

**REQUEST FOR PRODUCTION 33.**     Produce all Documents, Communications, and Social Media Postings exchanged between You and any current or former employee of Cancer Center that references or discusses Your employment relationship with Cancer Center.

**REQUEST FOR PRODUCTION 34.**     Produce all Documents, Communications, and Social Media Postings supporting or relating to Your position that Defendants discriminated against You.

**REQUEST FOR PRODUCTION 35.**     Produce all Documents, Communications, and Social Media Postings that substantiate, reflect, evidence or relate to any vaccinations You have received in the past ten years.

**REQUEST FOR PRODUCTION 36.**     Produce all Documents relating to or referencing Your charge of discrimination and retaliation filed with the Texas Workforce Commission, the EEOC and/or any other governmental organization.

---

**REQUEST FOR PRODUCTION 37.**     Produce all Documents that show Your alleged damages in this Lawsuit.

**REQUEST FOR PRODUCTION 38.**     Produce all Documents relied upon by You in calculating the amount of damages that You are claiming in this Lawsuit.

**REQUEST FOR PRODUCTION 39.**     Produce all Documents relating to each expert You intend to call as a witness at trial, including but not limited to all documents and communications sent to or received from each expert, resumes and reports.

**REQUEST FOR PRODUCTION 40.**     Produce all Documents, affidavits, sworn statements, notes, and other documents sent to, received from, or otherwise relating to any person You intend to call as a witness at trial, either in person, through deposition testimony, or through an affidavit.

**REQUEST FOR PRODUCTION 41.**     Produce all Documents and Communications between, to and/or from You, Craig Messick and Barbra Speer related to Your claims in this Lawsuit.

**REQUEST FOR PRODUCTION 42.**     Produce all Documents You referred to, relied upon, or used in any way to draft the Verified Third Amended Complaint, Your Initial Disclosures, or Your response to Defendants' First Set of Interrogatories.

Dated: December 15, 2022          Respectfully submitted,

**FOLEY & LARDNER LLP**

By: */s/ Jessica Glatzer Mason*
Jessica Glatzer Mason
Federal ID No. 617542
Foley & Lardner LLP
1000 Louisiana Street, Suite 2000
Houston, Texas 77002
(713) 276-5500 (Telephone)
(713) 276-5555 (Fax)
jmason@foley.com

Brooke Bahlinger
State Bar No. 24116056
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
(214) 999-4031 (Telephone)
bbahlinger@foley.com

**ATTORNEYS FOR DEFENDANTS**

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that on the 15th day of December 2022, a true and correct copy of the foregoing document was served on all counsel of record via electronic mail in accordance with the Federal Rules of Civil Procedure.

Kenneth A. Klukowski
Shaerr Jaffe LLP
1717 K Street NW, Suite 900
Washington, DC 20006

**ATTORNEY FOR PLAINTIFF**

                           */s/ Jessica Glatzer Mason*
                           Jessica Glatzer Mason

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| Bobby Bellard, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.3:22−cv−88 |
| | § | |
| The University Of Texas MD Anderson | § | |
| Cancer Center, et. al | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' FIRST REQUESTS FOR PRODUCTION
## TO PLAINTIFF CRAIG MESSICK

To:   Plaintiff, Craig Messick, by and through his attorney of record, Kenneth A. Klukowski, Shaerr Jaffe LLP, 1717 K Street NW, Suite 900, Washington, DC 20006

Defendants The University of Texas MD Anderson Cancer Center, Peter W.T. Pisters, Rosanna Morris, Carin Hagberg, Welela Tereffe, Roy Chemaly and Shibu Varghese ("Defendants") serve their First Request for Production on Plaintiff Craig Messick ("Messick").

Responses to these requests are due within **thirty (30) calendar days of service** of this request.

## <u>INSTRUCTIONS</u>

1.  You are required by the Federal Rules of Civil Procedure to respond to this Request for Production in writing and produce all responsive documents with Bates labels.

2.  If, after you have responded to this Request for Production, you discover or locate responsive documents that you did not produce, you must supplement your responses and produce the supplemental documents.

## <u>DEFINITIONS</u>

1.  "All other terms are to be interpreted in accordance with their normal usage in the English language.

2.  As used herein, "**Person**" means natural person(s), corporation(s), partnership(s), sole proprietorship(s), union(s), association(s), federation(s), or any other kind of entity.

3.  As used herein, "**Defendants**" means Defendants The University of Texas MD Anderson Cancer Center, Peter W.T. Pisters, Rosanna Morris, Carin Hagberg, Welela Tereffe, Roy Chemaly, and Shibu Varghese.

4.  As used herein, "**Cancer Center**" means Defendant, The University of Texas MD Anderson Cancer Center.

5.  As used herein, "**Individual Defendants**" means Defendants Peter W.T. Pisters, Rosanna Morris, Carin Hagberg, Welela Tereffe, Roy Chemaly, Shibu Varghese and John Does 1-5.

6.  As used herein, "**Plaintiffs**," means Bobby Bellard, Craig Messick and/or Barbra Speer both individually and collectively including all representatives of Plaintiffs acting or purporting to act on their behalf.

7.  "**You**" or "**Your**" means Craig Messick both individually and collectively including all representatives of Messick acting or purporting to act on his behalf.

8.  As used herein, "**Vaccine Policy**" means the vaccine policy Plaintiffs reference in the Verified Third Amended Complaint.

9.  "The term "**Document**" is used in its broadest possible sense and shall include, but not be limited to, any kind of written, printed, typed, electronically created, or stored; and other graphic matter of any type, documentary material, and drafts thereof, including, but not limited to, any correspondence, memoranda, interoffice or intra-office communications, notes, diaries, journals, calendars, contract documents, publications, calculations, estimates, vouchers, minutes of meetings, invoices, reports, studies, computer tapes, computer disks, computer cards, computer files, emails, photographs, negatives, slides, dictation belts, voice tapes, telegrams, notes of telephone conversations, and notes evidencing all Communications (defined below), including those made orally.

---

10.     The term "**Communication**" is used in its broadest possible sense and shall include, but not be limited to, any oral, written or electronic transmission of information among or between individuals and to oneself and includes, without limitation, meetings, discussions, conversations, telephone calls, electronic and instant messages, text messages, memoranda, letters, telecopies, email messages, conferences, seminars, or notes.

11.     The term "**Person**" refers to any individual, corporation, general partnership, limited partnership, joint venture, association, joint-stock company, trust, incorporated organization, government or political subdivision thereof, and any other non-natural person of whatever nature.

12.     The term "**all**" includes and encompasses "**any**."  The term "**any**" includes and encompasses "**all**."

13.     The term "**or**" includes and encompasses "**and**."  The term "**and**" includes and encompasses "**or**."

14.     The term "**Lawsuit**" means *Bobby Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et. al.*, Civil Action No. 3:22-cv-88 in the United States District Court Southern District of Texas Galveston Division.

15.     The term "**Date**" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

16.     The term "**Social Media**" means any internet-based social or networking website or webpages where people create, share, or exchange information or ideas over the internet. Social media includes but is not limited to, Bit Chute, Gab, Gettr, Parler, Rumble, Telegram, Truth Social, MeWe, Zello, LinkedIn, Facebook, Twitter, Pinterest, Google Plus, Instagram, Yelp, Flickr, YouTube, Word Press, Blogger, Blogspot, TikTok, Tumblr, Reddit, etc.

17.     The terms "**Post**," "**Posting**," "**Posted**," "**Upload**," "**Uploading**," or "**Uploaded**" means to create or place entry on a social media site, regardless of whether that entry is available to the general public or the entry is an original post, sharing other content, or commenting on another's post.

18.     The phrases "**Relate To**," "**Related To**," and "**Relating To**," or any variant thereof, include, but are not limited to, the following meanings:  referring to, supporting, located in, considered in connection with, bearing, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, concerning, opposing, favoring, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, reflecting, analyzing, constituting and being.

19.     In order to bring within the scope of this Request for Production any information that might otherwise be construed to be outside their scope:

---

    a.   the terms "and" as well as "or" shall be construed either disjunctively or conjunctively, as necessary;

    b.   the term "each" shall be construed to include "every" and vice versa;

    c.   the present tense shall be construed to include the past tense and vice versa; and

    d.   the singular of each word shall be construed to include its plural and vice versa.

20.    Each draft, original, and non-identical duplicate, whether different from the original because of marginal notes or other material inserted therein or attached thereto or otherwise, and all writings, records, documents and data compilations from which the information requested can be obtained or translated, that are in the possession, custody, or control of the party to whom this request is addressed shall be produced. In any instance in which this request names documents for production, it will be acceptable to provide a legible, true, and correct photocopy or other reproduction of the complete document named.

21.    The timeframe for this Request for Production is January 1, 2020 to the present unless otherwise stated.

22.    Plaintiff's counsel is invited to promptly notify Defendant's counsel of any difficulties it may have interpreting this Request for Production so as to facilitate just, speedy, and efficient responses.

## REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION 1.**      Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to Cancer Center's Vaccine Policy as referenced in Plaintiffs' Verified Third Amended Complaint.

**REQUEST FOR PRODUCTION 2.**      Produce all Documents, Communications, and Social Media Postings to, from and/or Posted by You from any account that relate to any requests for exemptions and/or accommodations You requested, including any approval of said requests.

**REQUEST FOR PRODUCTION 3.**      Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that evidence Your faith from December 2019 through the present, specifically Your faith-based objection to Cancer Center's Vaccine Policy.

**REQUEST FOR PRODUCTION 4.**      Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to masks from December 2019 through the present.

**REQUEST FOR PRODUCTION 5.**      Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to vaccinations from December 2019 through the present.

**REQUEST FOR PRODUCTION 6.**      Please produce all Documents, Social Media Postings, and Communications that evidence any animus of Cancer Center towards You.

**REQUEST FOR PRODUCTION 7.**      Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to COVID-19 vaccinations from December 2019 through the present.

**REQUEST FOR PRODUCTION 8.**      Produce all Social Media Postings Posted by You from any account that relate to COVID-19 from December 2019 through the present.

**REQUEST FOR PRODUCTION 9.**      Produce all Social Media Postings Posted by You from any account that relate to masking as a mitigation effort against the spread of COVID-19 from December 2019 through the present.

**REQUEST FOR PRODUCTION 10.**      Produce all Social Media Postings Posted by You from any account that relate to testing as a mitigation effort against the spread of COVID-19 from December 2019 through the present.

**REQUEST FOR PRODUCTION 11.**      Please produce all Documents, Social Media Postings, and Communications that evidence any ill will of Cancer Center towards You.

**REQUEST FOR PRODUCTION 12.**      Please produce all Documents, Social Media Postings, and Communications regarding Your religious beliefs and COVID-19 testing.

**REQUEST FOR PRODUCTION 13.**    Please produce all Documents, Social Media Postings, and Communications regarding Your religious beliefs and masking.

**REQUEST FOR PRODUCTION 14.**    Please produce all Documents, Social Media Postings, and Communications regarding Your religious beliefs and COVID-19 vaccines.

**REQUEST FOR PRODUCTION 15.**    Please produce all Documents, Social Media Postings, and Communications from all medical-based resources that informed Your disagreement with Cancer Center's COVID-19 testing policies and practices.

**REQUEST FOR PRODUCTION 16.**    Please produce all Documents, Social Media Postings, and Communications from all medical-based resources that informed Your disagreement with Cancer Center's facemask policies and practices.

**REQUEST FOR PRODUCTION 17.**    Please produce all Documents, Social Media Postings, and Communications from all medical-based resources that informed Your decision regarding the COVID-19 vaccine.

**REQUEST FOR PRODUCTION 18.**    Please produce all Documents, Social Media Postings, and Communications from all religious-based resources that informed your disagreement with Cancer Center's COVID-19 testing policies and practices.

**REQUEST FOR PRODUCTION 19.**    Please produce all Documents, Social Media Postings, and Communications from all religious-based resources you follow relating to the COVID-19 vaccine.

**REQUEST FOR PRODUCTION 20.**    Please produce all Documents, Social Media Postings, and Communications from all religious-based resources that informed your decision regarding the COVID-19 vaccine.

**REQUEST FOR PRODUCTION 21.**    Please produce all Documents, Social Media Postings, and Communications from all religious-based resources that informed your disagreement with Cancer Center's facemask policies and practices.

**REQUEST FOR PRODUCTION 22.**    Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that allegedly evidence that Defendants substantially burdened Your ability to observe Your religious activity.

**REQUEST FOR PRODUCTION 23.**    Produce all Documents and Communications that relate to and/or evidence employment contracts between You and Cancer Center in the last five years.

**REQUEST FOR PRODUCTION 24.**    Produce all Communications to, from and/or concerning You that You sent to and/or received from the Individual Defendants related to the Vaccine Policy from November 2021 through the present.

**REQUEST FOR PRODUCTION 25.**    Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to any requests

for exemptions and/or accommodations other employees requested in relation to Cancer Center's Vaccine Policy but that are in Your possession, custody or control.

**REQUEST FOR PRODUCTION 26.**     Produce all Documents, Communications, and Social Media Postings relating to employees who You reference in Paragraph 140 of the Verified Third Amended Complaint.

**REQUEST FOR PRODUCTION 27.**     Produce all Documents, Communications, and Social Media Postings relating to or referencing any complaints or reports of discrimination that You allegedly made to Defendants from November 2021 through the present.

**REQUEST FOR PRODUCTION 28.**     Produce all Documents, Communications, and Social Media Postings exchanged between You and any current or former employee of Cancer Center that references or discusses Your employment relationship with Cancer Center.

**REQUEST FOR PRODUCTION 29.**     Produce all Documents, Communications, and Social Media Postings supporting or relating to Your position that Defendants discriminated against You.

**REQUEST FOR PRODUCTION 30.**     Produce all Documents, Communications, and Social Media Postings that substantiate, reflect, evidence or relate to any vaccinations You have received in the past ten years.

**REQUEST FOR PRODUCTION 31.**     Produce all Documents relating to or referencing Your charge of discrimination and retaliation filed with the Texas Workforce Commission, the EEOC and/or any other governmental organization.

**REQUEST FOR PRODUCTION 32.**     Produce all Documents that show Your alleged damages in this Lawsuit.

**REQUEST FOR PRODUCTION 33.**     Produce all Documents relied upon by You in calculating the amount of damages that You are claiming in this Lawsuit.

**REQUEST FOR PRODUCTION 34.**     Produce all Documents relating to each expert You intend to call as a witness at trial, including but not limited to all documents and communications sent to or received from each expert, resumes and reports.

**REQUEST FOR PRODUCTION 35.**     Produce all Documents, affidavits, sworn statements, notes, and other documents sent to, received from, or otherwise relating to any person You intend to call as a witness at trial, either in person, through deposition testimony, or through an affidavit.

**REQUEST FOR PRODUCTION 36.**     Produce all Documents and Communications between, to and/or from You, Bobby Bellard and Barbra Speer related to Your claims in this Lawsuit.

**REQUEST FOR PRODUCTION 37.**     Produce all Documents You referred to, relied upon, or used in any way to draft the Verified Third Amended Complaint, Your Initial Disclosures, or Your response to Defendants' First Set of Interrogatories.

Dated: December 15, 2022    Respectfully submitted,

         **FOLEY & LARDNER LLP**

         By: */s/ Jessica Glatzer Mason*
         Jessica Glatzer Mason
         Federal ID No. 617542
         Foley & Lardner LLP
         1000 Louisiana Street, Suite 2000
         Houston, Texas 77002
         (713) 276-5500 (Telephone)
         (713) 276-5555 (Fax)
         jmason@foley.com

         Brooke Bahlinger
         State Bar No. 24116056
         Foley & Lardner LLP
         2021 McKinney Avenue, Suite 1600
         (214) 999-4031 (Telephone)
         bbahlinger@foley.com

         **ATTORNEYS FOR DEFENDANTS**

        **CERTIFICATE OF SERVICE**

   I hereby certify that on the 15th day of December 2022, a true and correct copy of the foregoing document was served on all counsel of record via electronic mail in accordance with the Federal Rules of Civil Procedure.

Kenneth A. Klukowski
Shaerr Jaffe LLP
1717 K Street NW, Suite 900
Washington, DC 20006

**ATTORNEY FOR PLAINTIFF**

        */s/ Jessica Glatzer Mason*
        Jessica Glatzer Mason

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

| | | |
|---|---|---|
| Bobby Bellard, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.3:22−cv−88 |
| | § | |
| The University Of Texas MD Anderson | § | |
| Cancer Center, et. al | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' FIRST REQUESTS FOR PRODUCTION
## TO PLAINTIFF BARBRA SPEER

To:    Plaintiff, Barbra Speer, by and through her attorney of record, Kenneth A. Klukowski, Shaerr Jaffe LLP, 1717 K Street NW, Suite 900, Washington, DC 20006

Defendants The University of Texas MD Anderson Cancer Center, Peter W.T. Pisters, Rosanna Morris, Carin Hagberg, Welela Tereffe, Roy Chemaly and Shibu Varghese ("Defendants") serve their First Request for Production on Plaintiff Barbra Speer ("Speer").

Responses to these requests are due within **thirty (30) calendar days of service** of this request.

## INSTRUCTIONS

1.  You are required by the Federal Rules of Civil Procedure to respond to this Request for Production in writing and produce all responsive documents with Bates labels.

2.  If, after you have responded to this Request for Production, you discover or locate responsive documents that you did not produce, you must supplement your responses and produce the supplemental documents.

## DEFINITIONS

1.      "All other terms are to be interpreted in accordance with their normal usage in the English language.

2.      As used herein, "**Person**" means natural person(s), corporation(s), partnership(s), sole proprietorship(s), union(s), association(s), federation(s), or any other kind of entity.

3.      As used herein, "**Defendants**" means Defendants The University of Texas MD Anderson Cancer Center, Peter W.T. Pisters, Rosanna Morris, Carin Hagberg, Welela Tereffe, Roy Chemaly, and Shibu Varghese.

4.      As used herein, "**Cancer Center**" means Defendant, The University of Texas MD Anderson Cancer Center.

5.      As used herein, "**Individual Defendants**" means Defendants Peter W.T. Pisters, Rosanna Morris, Carin Hagberg, Welela Tereffe, Roy Chemaly, Shibu Varghese and John Does 1-5.

6.      As used herein, "**Plaintiffs**," means Bobby Bellard, Craig Messick and/or Barbra Speer both individually and collectively including all representatives of Plaintiffs acting or purporting to act on their behalf.

7.      "**You**" or "**Your**" means Barbra Speer both individually and collectively including all representatives of Speer acting or purporting to act on her behalf.

8.      As used herein, "**Vaccine Policy**" means the vaccine policy Plaintiffs reference in the Verified Third Amended Complaint.

9.      "The term "**Document**" is used in its broadest possible sense and shall include, but not be limited to, any kind of written, printed, typed, electronically created, or stored; and other graphic matter of any type, documentary material, and drafts thereof, including, but not limited to, any correspondence, memoranda, interoffice or intra-office communications, notes, diaries, journals, calendars, contract documents, publications, calculations, estimates, vouchers, minutes of meetings, invoices, reports, studies, computer tapes, computer disks, computer cards, computer files, emails, photographs, negatives, slides, dictation belts, voice tapes, telegrams, notes of telephone conversations, and notes evidencing all Communications (defined below), including those made orally.

10.     The term "**Communication**" is used in its broadest possible sense and shall include, but not be limited to, any oral, written or electronic transmission of information among or between individuals and to oneself and includes, without limitation, meetings, discussions, conversations, telephone calls, electronic and instant messages, text messages, memoranda, letters, telecopies, email messages, conferences, seminars, or notes.

11.     The term "**Person**" refers to any individual, corporation, general partnership, limited partnership, joint venture, association, joint-stock company, trust, incorporated organization, government or political subdivision thereof, and any other non-natural person of whatever nature.

12.     The term "**all**" includes and encompasses "**any**."  The term "**any**" includes and encompasses "**all**."

13.     The term "**or**" includes and encompasses "**and**."  The term "**and**" includes and encompasses "**or**."

14.     The term "**Lawsuit**" means *Bobby Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et. al.*, Civil Action No. 3:22-cv-88 in the United States District Court Southern District of Texas Galveston Division.

15.     The term "**Date**" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

16.     The term "**Social Media**" means any internet-based social or networking website or webpages where people create, share, or exchange information or ideas over the internet. Social media includes but is not limited to, Bit Chute, Gab, Gettr, Parler, Rumble, Telegram, Truth Social, MeWe, Zello, LinkedIn, Facebook, Twitter, Pinterest, Google Plus, Instagram, Yelp, Flickr, YouTube, Word Press, Blogger, Blogspot, TikTok, Tumblr, Reddit, etc.

17.     The terms "**Post**," "**Posting**," "**Posted**," "**Upload**," "**Uploading**," or "**Uploaded**" means to create or place entry on a social media site, regardless of whether that entry is available to the general public or the entry is an original post, sharing other content, or commenting on another's post.

18.     The phrases "**Relate To**," "**Related To**," and "**Relating To**," or any variant thereof, include, but are not limited to, the following meanings:  referring to, supporting, located in, considered in connection with, bearing, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, concerning, opposing, favoring, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, reflecting, analyzing, constituting and being.

19.     In order to bring within the scope of this Request for Production any information that might otherwise be construed to be outside their scope:

    a.  the terms "and" as well as "or" shall be construed either disjunctively or conjunctively, as necessary;

    b.  the term "each" shall be construed to include "every" and vice versa;

    c.  the present tense shall be construed to include the past tense and vice versa; and

    d.  the singular of each word shall be construed to include its plural and vice versa.

20. Each draft, original, and non-identical duplicate, whether different from the original because of marginal notes or other material inserted therein or attached thereto or otherwise, and all writings, records, documents and data compilations from which the information requested can be obtained or translated, that are in the possession, custody, or control of the party to whom this request is addressed shall be produced. In any instance in which this request names documents for production, it will be acceptable to provide a legible, true, and correct photocopy or other reproduction of the complete document named.

21. The timeframe for this Request for Production is January 1, 2020 to the present unless otherwise stated.

22. Plaintiff's counsel is invited to promptly notify Defendant's counsel of any difficulties it may have interpreting this Request for Production so as to facilitate just, speedy, and efficient responses.

## REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION 1.**        Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to Cancer Center's Vaccine Policy as referenced in Plaintiffs' Verified Third Amended Complaint.

**REQUEST FOR PRODUCTION 2.**        Produce all Documents, Communications, and Social Media Postings to, from and/or Posted by You from any account that relate to any requests for exemptions and/or accommodations You requested, including any approval of said requests.

**REQUEST FOR PRODUCTION 3.**        Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that evidence Your faith from December 2019 through the present, specifically Your faith-based objection to Cancer Center's Vaccine Policy.

**REQUEST FOR PRODUCTION 4.**        Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to masks from December 2019 through the present.

**REQUEST FOR PRODUCTION 5.**        Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to vaccinations from December 2019 through the present.

**REQUEST FOR PRODUCTION 6.**        Please produce all Documents, Social Media Postings, and Communications that evidence any animus of Cancer Center towards You.

**REQUEST FOR PRODUCTION 7.**        Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to COVID-19 vaccinations from December 2019 through the present.

**REQUEST FOR PRODUCTION 8.**        Produce all Social Media Postings Posted by You from any account that relate to COVID-19 from December 2019 through the present.

**REQUEST FOR PRODUCTION 9.**        Produce all Social Media Postings Posted by You from any account that relate to masking as a mitigation effort against the spread of COVID-19 from December 2019 through the present.

**REQUEST FOR PRODUCTION 10.**        Produce all Social Media Postings Posted by You from any account that relate to testing as a mitigation effort against the spread of COVID-19 from December 2019 through the present.

**REQUEST FOR PRODUCTION 11.**        Please produce all Documents, Social Media Postings, and Communications that evidence any ill will of Cancer Center towards You.

**REQUEST FOR PRODUCTION 12.**        Please produce all Documents, Social Media Postings, and Communications regarding Your religious beliefs and COVID-19 testing.

**REQUEST FOR PRODUCTION 13.**      Please produce all Documents, Social Media Postings, and Communications regarding Your religious beliefs and masking.

**REQUEST FOR PRODUCTION 14.**      Please produce all Documents, Social Media Postings, and Communications regarding Your religious beliefs and COVID-19 vaccines.

**REQUEST FOR PRODUCTION 15.**      Please produce all Documents, Social Media Postings, and Communications from all medical-based resources that informed Your disagreement with Cancer Center's COVID-19 testing policies and practices.

**REQUEST FOR PRODUCTION 16.**      Please produce all Documents, Social Media Postings, and Communications from all medical-based resources that informed Your disagreement with Cancer Center's facemask policies and practices.

**REQUEST FOR PRODUCTION 17.**      Please produce all Documents, Social Media Postings, and Communications from all medical-based resources that informed Your decision regarding the COVID-19 vaccine.

**REQUEST FOR PRODUCTION 18.**      Please produce all Documents, Social Media Postings, and Communications from all religious-based resources that informed your disagreement with Cancer Center's COVID-19 testing policies and practices.

**REQUEST FOR PRODUCTION 19.**      Please produce all Documents, Social Media Postings, and Communications from all religious-based resources you follow relating to the COVID-19 vaccine.

**REQUEST FOR PRODUCTION 20.**      Please produce all Documents, Social Media Postings, and Communications from all religious-based resources that informed your decision regarding the COVID-19 vaccine.

**REQUEST FOR PRODUCTION 21.**      Please produce all Documents, Social Media Postings, and Communications from all religious-based resources that informed your disagreement with Cancer Center's facemask policies and practices.

**REQUEST FOR PRODUCTION 22.**      Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that allegedly evidence that Defendants substantially burdened Your ability to observe Your religious activity.

**REQUEST FOR PRODUCTION 23.**      Produce all Documents and Communications that relate to and/or evidence employment contracts between You and Cancer Center in the last five years.

**REQUEST FOR PRODUCTION 24.**      Produce all Communications to, from and/or concerning You that You sent to and/or received from the Individual Defendants related to the Vaccine Policy from November 2021 through the present.

**REQUEST FOR PRODUCTION 25.**      Produce all Documents, Communications, and Social Media Postings to, from, and/or Posted by You from any account that relate to any requests

for exemptions and/or accommodations other employees requested in relation to Cancer Center's Vaccine Policy but that are in Your possession, custody or control.

**REQUEST FOR PRODUCTION 26.**     Produce all Documents, Communications, and Social Media Postings relating to employees who You reference in Paragraph 140 of the Verified Third Amended Complaint.

**REQUEST FOR PRODUCTION 27.**     Produce all Documents, Communications, and Social Media Postings relating to or referencing any complaints or reports of discrimination that You allegedly made to Defendants from November 2021 through the present.

**REQUEST FOR PRODUCTION 28.**     Produce all Documents, Communications, and Social Media Postings exchanged between You and any current or former employee of Cancer Center that references or discusses Your employment relationship with Cancer Center.

**REQUEST FOR PRODUCTION 29.**     Produce all Documents, Communications, and Social Media Postings supporting or relating to Your position that Defendants discriminated against You.

**REQUEST FOR PRODUCTION 30.**     Produce all Documents, Communications, and Social Media Postings that substantiate, reflect, evidence or relate to any vaccinations You have received in the past ten years.

**REQUEST FOR PRODUCTION 31.**     Produce all Documents relating to or referencing Your charge of discrimination and retaliation filed with the Texas Workforce Commission, the EEOC and/or any other governmental organization.

**REQUEST FOR PRODUCTION 32.**     Produce all Documents that show Your alleged damages in this Lawsuit.

**REQUEST FOR PRODUCTION 33.**     Produce all Documents relied upon by You in calculating the amount of damages that You are claiming in this Lawsuit.

**REQUEST FOR PRODUCTION 34.**     Produce all Documents relating to each expert You intend to call as a witness at trial, including but not limited to all documents and communications sent to or received from each expert, resumes and reports.

**REQUEST FOR PRODUCTION 35.**     Produce all Documents, affidavits, sworn statements, notes, and other documents sent to, received from, or otherwise relating to any person You intend to call as a witness at trial, either in person, through deposition testimony, or through an affidavit.

**REQUEST FOR PRODUCTION 36.**     Produce all Documents and Communications between, to and/or from You, Craig Messick and Bobby Bellard related to Your claims in this Lawsuit.

**REQUEST FOR PRODUCTION 37.**     Produce all Documents You referred to, relied upon, or used in any way to draft the Verified Third Amended Complaint, Your Initial Disclosures, or Your response to Defendants' First Set of Interrogatories.

Dated: December 15, 2022    Respectfully submitted,

          **FOLEY & LARDNER LLP**

          By: */s/ Jessica Glatzer Mason*
          Jessica Glatzer Mason
          Federal ID No. 617542
          Foley & Lardner LLP
          1000 Louisiana Street, Suite 2000
          Houston, Texas 77002
          (713) 276-5500 (Telephone)
          (713) 276-5555 (Fax)
          jmason@foley.com

          Brooke Bahlinger
          State Bar No. 24116056
          Foley & Lardner LLP
          2021 McKinney Avenue, Suite 1600
          (214) 999-4031 (Telephone)
          bbahlinger@foley.com

          **ATTORNEYS FOR DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on the 15th day of December 2022, a true and correct copy of the foregoing document was served on all counsel of record via electronic mail in accordance with the Federal Rules of Civil Procedure.

Kenneth A. Klukowski
Shaerr Jaffe LLP
1717 K Street NW, Suite 900
Washington, DC 20006

**ATTORNEY FOR PLAINTIFF**

          */s/ Jessica Glatzer Mason*
          Jessica Glatzer Mason

Exhibit B



**ATTORNEYS AT LAW**

2021 MCKINNEY AVENUE, SUITE 1600
DALLAS, TX  75201-3340
214.999.3000 TEL
214.999.4667 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
214.999.4031
bbahlinger@foley.com

CLIENT/MATTER NUMBER
625455-0440

January 24, 2023

<u>**Via E-Mail**</u>
Kenneth A. Klukowski
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone:  (202) 787-1060
Facsimile:  (202) 776-0136
kklukowski@schaerr-jaffe.com

Re:     *Bobby Bellard, et al. v. The University of Texas MD Anderson
Cancer Center, et al.* Case No. 3:22-cv-88 Letter regarding
Plaintiffs' Document Production

Mr. Klukowski,

Your immediate attention is needed. I write this letter pursuant to Rule 6 of the Galveston District Court Rules of Practice applicable to cases before Judge Jeffrey V. Brown in the Galveston Division of the Southern District of Texas. This correspondence will serve as a meet and confer regarding the defects with Plaintiffs' document production served in response to Defendants' First Requests for Production.

It has come to our attention that Plaintiffs inadequately searched for responsive documents and that anti-spoliation measures have not been appropriately implemented.

Additionally, Plaintiffs failed to produce the below categories of documents, which are responsive to several requests for production, including, but not limited to, Requests Nos. 8, 41, 10, and 12:

1.  Plaintiff Bellard

    a.  Notes and journals about his religious faith.

    b.  Text messages and emails with Plaintiff Speer.

    c.  Text messages and emails with Plaintiff Messick.

    d.  "Battle log" (Counsel indicated Plaintiff Bellard would produce said log, but we have yet to receive it.)



**FOLEY & LARDNER LLP**

Kenneth A Klukowski
January 24, 2023
Page 2

 e. Emails between him and his wife regarding his religious beliefs, specifically those involving the use of fetal tissue in vaccines.

 f. Lab Corp lab results related to his "natural immunity" from COVID-19.

 g. Text messages between himself and Dr. Mitschke.

 h. Other responsive documents, including text messages and email communications.

2. Plaintiff Messick

 a. Recording of Plaintiff Messick's conversation with Dr. Chang.

 b. Emails between him and MD Anderson employees regarding the withdrawal of credentials.

 c. Text messages and emails with Michele DeAngelo.

 d. Text messages and emails with MD Anderson employees regarding his exemption requests(s).

 e. Text messages and emails with Plaintiff Speer.

 f. Text messages and emails with Plaintiff Messick.

 g. Other responsive documents, including text messages and email communications.

 Despite not having taken Plaintiff Speer's deposition as of the date of this letter, we are conferring on the issue of responsive text messages and email communications. Defendants also hereby reserve their right to confer regarding more specific issues with respect to each Plaintiff.

 Please produce any responsive documents in your and Plaintiffs' possession, custody, or control by **January 27, 2023** or Defendants will move forward with a motion to compel.



Kenneth A Klukowski
January 24, 2023
Page 3

Very truly yours,

*/s/ Brooke C. Bahlinger*

Brooke C. Bahlinger



January 27, 2023

***Via Electronic Mail***

Carrie B. Hoffman
Brooke C. Bahlinger
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
choffman@foley.com
bbahlinger@foley.com

      Re:     *Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et al.*

Dear Carrie and Brooke,

      Please accept this as our response to your January 24, 2023 letter concerning certain documents.  We are happy to discuss further if you believe that necessary.

**Regarding Dr. Bellard:**

1. His notes and journals about his religious faith were taken in the past and unrelated to the Covid-19 vaccine.  They are personal and we see no relevance to any issue in the case.  We will verify whether any were written after December 2019 as set out in Request for Production No. 8, and if they were and relate to his religious views on the vaccine, we will provide those entries.  Otherwise, we believe they are irrelevant and/or non-responsive.

2. Group texts with Drs. Speer and Messick – we have received those from Dr. Bellard and are reviewing them.  Much of the information is privileged or non-responsive.  Any non-privileged and responsive communications will be provided.  We hope to upload any such material to the Dropbox by Monday.

3. "Battle log" – that will be uploaded to the Dropbox by Monday.

4. Emails between him and his wife regarding his religious beliefs and use of aborted fetal tissue in vaccines are subject to the marital privilege and irrelevant here because MD Anderson did not base the denial of his religious accommodation request on communications with his wife on this issue.  We will first determine if any such emails exist within the timeframe of your Requests for Production and if so, provide a further response after our review.  We will have that completed as promptly as possible.

**Kenneth A. Klukowski** | SENIOR COUNSEL
Office   (202) 787-1060
Mobile  (623) 261-9249
Email   kklukowski@schaerr-jaffe.com

SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
www.schaerr-jaffe.com

Foley & Lardner
January 27, 2023
Page 2

5. The Lab Corp test results on his natural immunity do not appear responsive to any of your requests for production. If you believe they are, we would appreciate you explaining the specific Request for Production to which you believe they are responsive. We can then provide you a more complete response to this request.

6. To the extent Dr. Bellard has the text messages with Dr. Mitschke regarding his increase in palpitations due to the stress brought on by Defendants' actions in this case, we will provide those.

7. We have requested Dr. Bellard conduct yet another search of his emails and texts. To the extent any additional responsive material is located, we will provide those as required by the Federal Rules of Civil Procedure.

**Regarding Dr. Messick:**

1. The recording of the April 2022 meeting between Dr. Messick and Dr. Chang will be uploaded to the Dropbox by Monday.

2. We assume your second request related to "withdrawal of credentials" relates to the non-renewal of his contract, being placed on administrative leave, and being forbidden from returning to MD Anderson or having anything to do with patient care from February 23, 2022, to March 24, 2022. To the extent he has emails with individuals at MD Anderson on this issue that have not already been provided, including his supervisor and Human Resources, we will provide those. If you are seeking something different, please let me know so we can respond appropriately.

3. We have asked Dr. Messick to conduct another search for emails and text messages with Michele DeAngelo. To the extent there are any relevant communications, they will be provided. Please note that MD Anderson required him to turn in his work phone in April 2022 and issued him a new phone. He was unable to personally back up his work phone prior to MD Anderson taking possession of the device. We assume his work email account remains intact, but MD Anderson is in a better position to know the answer to that. As Dr. Messick explained during his deposition, his work computer was hacked in December 2022 and MD Anderson took possession of that computer. Dr. Messick no longer has access to any information stored on that computer, but perhaps MD Anderson does. We trust that you will provide copies of any relevant material found on those confiscated devices.

4. Dr. Messick previously provided text and email messages he had regarding his exemption request. We will have him do another search, and if any additional responsive documents are located, we will provide them.

5. The issue of group texts with Dr. Speer and Dr. Bellard is being addressed as noted above.

6. We have requested Dr. Messick conduct yet another search of his emails and text messages for Requests for Production aside from the exemption request noted above. To the extent any additional responsive material is located, we will provide those as required by the Federal Rules of Civil Procedure.

Foley & Lardner
January 27, 2023
Page 3


      We hope this addresses the issues raised in your letter to your satisfaction.  I will let you know once the documents noted above have been added to the Dropbox and their location.


Sincerely,


*/s/ Kenneth A. Klukowski*
Kenneth A. Klukowski


cc via electronic mail:

Jessica Glatzer Mason, Foley & Lardner LLP
jmason@foley.com



**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

2021 MCKINNEY AVENUE, SUITE 1600
DALLAS, TX  75201-3340
214.999.3000 TEL
214.999.4667 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
214.999.4031
bbahlinger@foley.com

CLIENT/MATTER NUMBER
625455-0440

February 6, 2023

<u>**Via E-Mail**</u>
Kenneth A. Klukowski
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone:  (202) 787-1060
Facsimile:  (202) 776-0136
kklukowski@schaerr-jaffe.com

Re:    *Bobby Bellard, et al. v. The University of Texas MD Anderson
Cancer Center, et al.* Case No. 3:22-cv-88 Letter regarding
Plaintiffs' Document Production

Mr. Klukowski,

Your immediate attention is needed. I write this letter pursuant to Rule 6 of the Galveston District Court Rules of Practice applicable to cases before Judge Jeffrey V. Brown in the Galveston Division of the Southern District of Texas. This correspondence will serve as a meet and confer regarding the defects with Plaintiffs' document production served in response to Defendants' First Requests for Production.

It has come to our attention that Plaintiffs inadequately searched for responsive documents and that anti-spoliation measures have not been appropriately implemented.

Additionally, Plaintiff Speer failed to produce the below categories of documents, which are responsive to several requests for production, including, but not limited to, Requests Nos. 8, 41, 10, and 12:

1. Plaintiff Speer

   a. Notes and journals about her religious faith.

   b. All documents and communications with Plaintiff Bellard.

   c. All documents and communications with Plaintiff Messick.

   d. All documents and communications with Crystal.

   e. All documents and communications with Dr. Gabermichael.



**FOLEY & LARDNER LLP**

Kenneth A Klukowski
February 6, 2023
Page 2

    f.   All documents and communications with Dr. Shaun Tindal.

    g.   All documents and communications with Bishop.

    h.   All documents and communications with Jerry Bridges.

    i.   All documents and communications with Tamra Kelly.

    j.   All recordings of Individual Defendants in this lawsuit or that are otherwise responsive.

    k.   Documents that detail therapy visits and other records that evidence alleged emotional distress damages.

    l.   Other employees' exemption requests in Plaintiff Speer's possession, custody or control.

    m.   Other responsive documents and communications, including text messages and email communications.

Defendants also hereby reserve their right to confer regarding more specific issues with respect to each Plaintiff.

Please produce any responsive documents in your and Plaintiffs' possession, custody, or control by **February 17, 2023** or Defendants will move forward with a motion to compel.

Very truly yours,

*/s/ Brooke C. Bahlinger*

Brooke C. Bahlinger



ATTORNEYS AT LAW

2021 MCKINNEY AVENUE, SUITE 1600
DALLAS, TX  75201-3340
214.999.3000 TEL
214.999.4667 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
214.999.4031
bbahlinger@foley.com

CLIENT/MATTER NUMBER
642631-0010

February 8, 2023

**Via E-Mail**
Kenneth A. Klukowski
Schaerr Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060
Facsimile: (202) 787-0136
kklukowski@schaerr-jaffe.com

> Re:   *Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et al.* Case No. 3:22-cv-88 Letter regarding Plaintiffs' Document Production

Ken:

This letter represents Defendants' response to your correspondence dated January 27, 2023. Defendants reiterate their requests for Dr. Bellard's notes and journals concerning his religious faith, for responsive, non-privileged group texts between Drs. Bellard, Speer, and Messick and other documents you agreed to produce.

It is Defendants' position that Dr. Bellard's notes and journals regarding his religious faith are relevant and material to the sincerity and centrality of Dr. Bellard's religious beliefs. The sincerity of a plaintiff's religious beliefs is, as you know, is an essential element of several claims. *See, e.g.*, *Africa v. Commonwealth of Pa.*, 662 F.2d 1025, 1031 (3d Cir. 1981) (internal citations omitted) ("Without some sort of required showing of sincerity on the part of the individual or organization seeking judicial protection of its beliefs, the first amendment would be 'a limitless excuse for avoiding all unwanted legal obligations.'"). As such, Defendants reiterate their request that Dr. Bellard produce any and all notes and journal entries pertaining to his religious faith written on or after December 2019, irrespective of whether such notes and entries relate directly to his views on the COVID-19 vaccine. Please produce all requested, non-privileged documents by February 17, 2023. Otherwise, Defendants will move forward with a motion to compel.

Further, in your January 27, 2023, letter you noted that many of the group texts between Drs. Bellard, Messick, and Speer are either privileged or non-responsive. First, Defendants wish to note that group conversations between Plaintiffs and any other individual (aside from Plaintiffs' counsel) are not privileged. Second, group communications among Plaintiffs, made without the involvement of their attorney, are only privileged to the extent that were made for the purpose of obtaining legal advice. *See, e.g.*, *Post v. Killington, Ltd.*, 262 F.R.D. 393, 399 (D. Vt. July 22, 2009) (stating that

AUSTIN          DETROIT          MEXICO CITY      SACRAMENTO       TALLAHASSEE
BOSTON          HOUSTON          MIAMI            SALT LAKE CITY   TAMPA
CHICAGO         JACKSONVILLE     MILWAUKEE        SAN DIEGO        WASHINGTON, D.C.
DALLAS          LOS ANGELES      NEW YORK         SAN FRANCISCO    BRUSSELS
DENVER          MADISON          ORLANDO          SILICON VALLEY   TOKYO



**FOLEY & LARDNER LLP**

February 8, 2023
Page 2

communications among co-clients are generally not privileged, unless "made specifically for the purposes of facilitating the rendition of legal services."); *In re Wagar*, No. 1:06-MC-127, 2006 WL 3699544, at * 12 (N.D.N.Y. Dec. 13, 2006) ("[P]arties conferring among themselves . . . does not preserve the privilege [when] they are not seeking legal advice or sharing information to receive legal advice."). Given the above, Defendants affirm their request for all non-privileged group texts between Plaintiffs that relate in any way to Plaintiffs' claims in this lawsuit. Please produce all requested, non-privileged documents by February 17, 2023 or we will seek to compel. Defendants also hereby request a privilege log by February 17, 2023.

Additionally, in your correspondence you indicated that you would determine whether any responsive emails between Dr. Bellard and his wife exist, and provide us with a further response. At this time, Defendants restate their request for such response. Please provide a response by February 17, 2023. Otherwise, Defendants will move forward with a motion to compel.

Lastly, we have not yet received the items you promised to produce in your correspondence dated January 27, 2023. Please produce all requested, non-privileged documents by February 17, 2023. Otherwise, Defendants will move forward with a motion to compel.

Sincerely,

*/s/ Brooke C. Bahlinger*
Brooke C. Bahlinger

BCB:

February 13, 2023

*Via Electronic Mail*

Carrie B. Hoffman
Brooke C. Bahlinger
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
choffman@foley.com
bbahlinger@foley.com

  Re: *Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et al.*

Dear Carrie and Brooke,

  Please accept this as our response to your February 6, 2023, letter concerning your claim that Dr. Speer failed to produce certain documents. We have asked her to conduct another search for any potentially responsive documents based on your letter.  While that is being done, we wanted to address certain issues set out in your letter.

  a. Any journals or notes kept by Dr. Speer related to her religious faith is overbroad as set out in our discovery responses.  At no time did MDACC or any Individual Defendant question Dr. Speer's sincerity with respect to her religious beliefs.  The only issue is the COVID-19 vaccine.  Should she have any religious journals that contain any entries or discussion regarding the vaccine, we will provide those subject to the protective order in place.

  b. Documents and communications with Dr. Bellard that are not privileged and responsive to your requests were provided as part of the group text messages previously provided as Bellard 78-142.  A privilege log regarding other communications between the two is being provided under separate cover.

  c. Documents and communications with Dr. Messick that are not privileged and responsive to your requests were provided as part of the group text messages previously provided as Bellard 78-142.  A privilege log regarding other communications between the two is being provided under separate cover.

  d. Documents and communications with "Crystal" – we have asked Dr. Speer to conduct another search for any responsive communications.  Should any additional documents be discovered, they will be provided.

  e. Documents and communications with Dr. Gabermichael – we have asked Dr. Speer to conduct another search for any responsive communications.  Should any additional documents be discovered, they will be provided.

f.  Documents and communications with Dr. Shaun Tindal – we have asked Dr. Speer to conduct another search for any responsive communications.  Should any additional documents be discovered, they will be provided.

g.  Documents and communications with "Bishop" – we have asked Dr. Speer to conduct another search for any responsive communications.  Should any additional documents be discovered, they will be provided.

h.  Documents and communications with Jerry Bridges – we have asked Dr. Speer to conduct another search for any responsive communications.  Should any additional documents be discovered, they will be provided.

i.  Documents and communications with Tamra Kelly – we have asked Dr. Speer to conduct another search for any responsive communications.  Should any additional documents be discovered, they will be provided.

j.  Recording of Individual Defendants in this lawsuit – we have produced the recordings made by Dr. Speer, all of which came from videos broadcast by Defendants to Dr. Speer as an employee of MDACC.  Defendants, however, failed to produce the recordings at issue even though they are clearly responsive and directly related to the vaccine mandate at issue.  Should Dr. Speer have any other recordings, they will be provided.

k.  Documents related to her one therapy session – Dr. Speer is not in possession of any documents related to her therapy session.  She will sign a release for the production of those documents by the therapist subject to the protective order entered in this case and that Defendants provide copies of any documents received from the therapist.

l.  Dr. Speer has produced all employee exemption requests in her possession.  Nevertheless, we have asked her to conduct another search for any additional responsive documents and will produce those should they exist.

m.  "Other responsive documents and communications, including text messages and email communications" – this is quite vague.  Nevertheless, we have asked Dr. Speer to conduct another search of her email and text messages for any communications related to the issues in this case.  Should additional responsive communications be located, they will be provided.

We hope this addresses the issues raised in your letter to your satisfaction.  I will let you know once the documents noted above have been added to the Dropbox and their location, if any.

Sincerely,

*/s/ Kenneth A. Klukowski*

Kenneth A. Klukowski

cc via electronic mail:
Jessica Glatzer Mason, Foley & Lardner LLP
jmason@foley.com

February 13, 2023

*Via Electronic Mail*

Carrie B. Hoffman
Brooke C. Bahlinger
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
choffman@foley.com
bbahlinger@foley.com

      Re:    *Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et al.*

Dear Carrie and Brooke,

      Please accept this as our response to your February 8, 2023, letter concerning documents related to Dr. Bellard.  Initially, as promised, we uploaded supplemental production for Dr. Bellard and Dr. Messick on January 30.  They are under the Bellard folder RFP 7 (Supp) and RFP 37 and under the Messick folder RFP 23 (Supp).

      Regarding Dr. Bellard's religious journals, at no time did Defendants communicate that Dr. Bellard's request for a religious accommodation was being denied because Defendants questioned the sincerity of his religious beliefs.  Further, only his religious belief regarding the COVID-19 vaccine is at issue in this case.  Indeed, Request for Production Nos. 8 and 19 are limited to Dr. Bellard's religious beliefs as they relate to the COVID-19 vaccine.  If Defendants are now going to offer a post-hoc and clearly pretextual justification for their denial of his two religious accommodation requests by suggesting that they had reason to believe he was not being sincere in his religious objections to the COVID-19 vaccine, even then only Dr. Bellard's religious beliefs regarding the vaccine would be relevant.  Even though there are no journal entries on or after December 31, 2019, concerning the COVID-19 vaccine, we will provide the two entries made during that timeframe subject to the protective order entered in this case.  They will be placed in the Dropbox under RFP 8 as soon as they are ready.

      Regarding the group texts between Drs. Bellard, Speer, and Messick, all non-privileged responsive documents have been provided.  A privilege log is enclosed showing the date range and number of pages redacted due to the attorney-client and work-product privileges.  There are discussions between the three on conversations they had with counsel, discussing information requested by counsel, and litigation strategy, all protected by the attorney-client and/or work-product privileges.

      We have reviewed email correspondence between Dr. Bellard and his wife. Notwithstanding the fact these communications are covered by the marital privilege, there are no

email communications regarding their religious beliefs and the use of aborted fetal tissue. Furthermore, there are not text messages between the two on this topic.

As noted above, the only additional material located were the group text messages with Drs. Speer and Messick.  There were no text messages with Dr. Mitschke regarding Dr. Bellard's increase in palpitations due to stress brought on by Defendants' actions in this case.

We hope this addresses the issues raised in your letter to your satisfaction.

Sincerely,

*/s/ Kenneth A. Klukowski*

Kenneth A. Klukowski

cc via electronic mail:

Jessica Glatzer Mason, Foley & Lardner LLP
jmason@foley.com



ATTORNEYS AT LAW

2021 MCKINNEY AVENUE, SUITE 1600
DALLAS, TX 75201-3340
214.999.3000 TEL
214.999.4667 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
214.999.4031
bbahlinger@foley.com

CLIENT/MATTER NUMBER
642631-0010

February 20, 2023

<u>**Via E-Mail**</u>
Kenneth A. Klukowski
Schaerr Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060
Facsimile: (202) 787-0136
kklukowski@schaerr-jaffe.com

Re:    *Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et al.* Case No. 3:22-cv-88 Letter regarding Plaintiffs' Document Production

Mr. Klukowski:

This letter is Defendants' response to both of your letters dated February 13, 2023. At this time, Defendants restate their requests for Dr. Bellard's and Dr. Speer's notes and journals regarding their religious faith, non-privileged communications between the Plaintiffs, and the other documents you agreed to produce as detailed on pages 2 and 3 of this letter.

Defendants maintain that journals and notes kept by Drs. Bellard and Speer related to their religious faith are squarely material to the issues raised in this lawsuit. As previously noted, the sincerity of a plaintiff's religious belief is an essential element of the claims filed by Drs. Bellard and Speer in this matter. This element remains—and must be affirmatively established by Plaintiffs—regardless of whether any Defendant questioned the sincerity of the Plaintiffs' religious beliefs at the time their accommodation requests were denied and subsequently granted. Moreover, it is Defendants' position that *all* entries pertaining to Dr. Bellard's or Dr. Speer's religious beliefs drafted on or after December 2019 are germane to the sincerity issue. Please produce all requested, non-privileged Documents and Communications (as defined in our discovery requests) on or before 1:00 p.m. CST on February 24, 2023 (the "Deadline"), or Defendants will file a motion to compel and seek the court's intervention.

Also, as previously mentioned, discussions among and between Drs. Bellard, Messick, and Speer—outside the presence of their attorney—are not automatically subject to privilege, even if they relate to this lawsuit. Rather, such communications only receive privilege if they *facilitate the rendition of legal advice. Luckenbach Tex., Inc. v. Engel*, No. 1:19-CV-00567-DH, 2022 WL 9530041, at *3 (W.D. Tex. Oct. 14, 2022) ("Because it is an extension of the attorney-client privilege and work-product doctrine, and not a standalone privilege in itself; if the withheld communication does not first

AUSTIN          DETROIT          MEXICO CITY          SACRAMENTO          TALLAHASSEE
BOSTON          HOUSTON          MIAMI          SALT LAKE CITY          TAMPA
CHICAGO          JACKSONVILLE          MILWAUKEE          SAN DIEGO          WASHINGTON, D.C.
DALLAS          LOS ANGELES          NEW YORK          SAN FRANCISCO          BRUSSELS
DENVER          MADISON          ORLANDO          SILICON VALLEY          TOKYO

4860-4955-6561.1



satisfy the elements of one of those protections, then the common-legal-interest privilege will not apply."). Discussions between Plaintiffs about their meetings with counsel are only privileged if they reflect counsel's legal advice, or were made for the purpose of obtaining such advice. As to the Plaintiffs' discussion of litigation strategy, again, such conversations are only privileged to the extent that the reflect counsel's legal advice, or to facilitate receiving that advice. Thus, Defendants reiterate their request that Plaintiffs produce all privileged, non-responsive communications that relate to Plaintiffs' claims in this lawsuit on or before the Deadline.

Relatedly, Defendants fail to see how an email introducing Drs. Bellard and Speer to J. Schneider could ever be protected by the attorney-client privilege. As far as Defendants are aware, and as far as the produced documents reveal, Drs. Bellard and Speer were not clients, or potential clients, of Schneider. As such, Plaintiffs' communications with Schneider, and Plaintiffs' counsel's email introducing them to Schneider, were not made pursuant to an attorney-client relationship, and are not privileged. *United States v. Harrelson*, 754 F.2d 1153, 1167 (5th Cir. 1985) ("One who wishes to assert the attorney-client privilege bears the burden of proving the existence of an attorney-client relationship."). Defendants request that Plaintiffs produce an unreacted version of the documents bates stamped MESSICK_0346 and 0347 on or before the Deadline.

Additionally, on February 13, 2023, Defendants received the document beginning with bates stamp BELLARD_0063. On or before the Deadline, Defendants request Plaintiffs' confirmation that the document beginning with the aforementioned bates stamp constitutes Dr. Bellard's "battle log."

We have not yet received many of the items you promised to produce in your correspondences dated February 13, 2023, including, but not limited to the following:

(i)      All documents and communications with Crystal,

(ii)     All documents and communications with Dr. Gabermichael,

(iii)    All documents and communications with Dr. Shaun Tindal,

(iv)     All documents and communications with Bishop,

(v)      All documents and communications with Jerry Bridges,

(vi)     All documents and communications with Tamra Kelly,

(vii)    Documents that detail therapy visits and other records that evidence alleged emotional distress damages, and

(viii)   Other employees' exemption requests (to the extent there are any).



**FOLEY & LARDNER LLP**

February 20, 2023
Page 3

Additionally, we have not received a response to the Messick discovery issues as stated in our January 24th letter, including, but not limited to the following:

(i)     emails between him and MD Anderson employees regarding the withdrawal of credentials,

(ii)    text messages and emails with Michele DeAngelo, and

(iii)   text messages and emails with MD Anderson employees regarding his exemption request(s).

Defendants intend to move forward with a motion to compel to obtain the court's intervention.

Sincerely,

*/s/ Brooke C. Bahlinger*

Brooke C. Bahlinger

BCB:

February 21, 2023

*Via Electronic Mail*

Brooke C. Bahlinger
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
choffman@foley.com
bbahlinger@foley.com

   Re: *Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et al.*

Dear Brooke,

   Please accept this as our response to your February 20, 2023, letter concerning questions related to document production for Drs. Bellard, Speer, and Messick. As noted below, with the production of additional documents from Dr. Speer, our document production is complete.

*Dr. Bellard*

  a. Dr. Bellard has provided all entries in his religious journal from December 2019 to the present. Contrary to your assertion, he did establish the basis and sincerity of his religious beliefs as part of his religious accommodation request. Defendants did not question the sincerity of his beliefs during that process and, accordingly, did not rely on any alleged lack of sincerity in making their decision to deny his requests. His journal is not relevant to his claim for damages or any other issue in this matter. Nevertheless, he chose to provide it to avoid any such issue. His production is complete in this regard.

  b. Non-privileged documents of communications between Dr. Bellard, Dr. Speer, and Dr. Messick that relate or concern the issues in this case have been provided. Their communications related to conversations with counsel, discussing case strategy, and gathering of information for their lawsuit are privileged as even the cases noted in your letter acknowledge. All non-privileged communications having been produced, this production is now complete.

  c. We will provide the full email of introduction (Messick 346-347).

  d. Dr. Bellard's "Battle Log" was provided as Bellard 63-77.

*Dr. Speer*

  a. Dr. Speer's religious journal is personal and private and not relevant to the issues in this case. She records her prayers on many personal and private matters and there are no entries related to the COVID-19 mandate, the vaccine, or her request for accommodation. As

noted above, Defendants have never questioned the sincerity of her religious beliefs and have yet to articulate a single basis for doing so now. Because her prayer journal has no relevance to the issues in this case, she will not be producing any portion of her private prayers.

b.  After another search, Dr. Speer has produced what additional communications she was able to locate with the individuals identified in your February 6 letter. They were placed in the Dropbox today under RFP 24. With this production, Dr. Speer's document production is complete.

c.  Regarding Dr. Speer's single therapy visit, as noted in our previous letter, she does not have those documents but will sign a release to permit Defendants to obtain a copy so long as a full set of any material received is then provided to us.

*Dr. Messick*

a.  Dr. Messick conducted another full search of his phone, email, and text messages and did not locate any additional responsive documents. His document production is now complete.

Plaintiffs having fully complied with your document requests, we look forward to Defendants addressing the issues raised in our February 16, 2023, letter. We believe these matters should be able to be resolved without threats of filing motions to compel in every correspondence.

Sincerely,

*/s/ Kenneth A. Klukowski*

Kenneth A. Klukowski

cc via electronic mail:
Carrie Hoffman, Foley & Lardner LLP
choffman@foley.com
Jessica Glatzer Mason, Foley & Lardner LLP
jmason@foley.com



ATTORNEYS AT LAW

2021 MCKINNEY AVENUE, SUITE 1600
DALLAS, TX  75201-3340
214.999.3000 TEL
214.999.4667 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
214.999.4031
bbahlinger@foley.com

CLIENT/MATTER NUMBER
642631-0010

February 23, 2023

**<u>Via E-Mail</u>**
Kenneth A. Klukowski
Schaerr Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060
Facsimile: (202) 787-0136
kklukowski@schaerr-jaffe.com

Re:      *Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et al.* Case No. 3:22-cv-88 Letter regarding Plaintiffs' Document Production

Mr. Klukowski:

This letter is Defendants' response to your letter dated February 21, 2023. At this time, Defendants have listed the remaining issues in the bullets below:

- Despite your contention, Bellard's "entries in his religious journal" have not been provided in Bellard's production. If you believe they have been provided, please provide Bates numbers.

- There are several redacted text messages, but these messages are not logged in your privilege log.  Accordingly, Defendants believe that these redacted messages are not privileged, please provide un-redacted versions of the documents listed below this paragraph. To the extent you intend to claim privilege in these communications, please provide a log that includes these documents. Plaintiffs should also note that Bellard_0110 is not privileged as it references a conversation with "Skibber" and therefore we ask that it be produced.

  o Bellard_0079-0080

  o Bellard_0090-0091

  o Bellard_0099

  o Bellard_0103

  o Bellard_0114

**Error! Unknown document property name.**



**FOLEY & LARDNER LLP**

February 23, 2023
Page 2

- o Bellard_0120-0121

- o Bellard_0137

- o Bellard_0140-0141

- The text message conversation that is a screen shot in Bellard_0091 has not been provided and is responsive. Please provide those communications and all other responsive communications in that message chain.

- There are several text message communications that have not been provided in full. Please see below documents that contain incomplete messages.

    - o Bellard_0081

    - o Bellard_0084

    - o Bellard_0086

    - o Bellard_0093

    - o Bellard_0096-0097

    - o Bellard_0100

    - o Bellard_0117

    - o Bellard_0132

    - o Bellard_0135-0136

- On Plaintiffs' privilege log, Plaintiffs also note that Bellard_0143-0280 have been withheld based on privilege. It is quite difficult to believe the entirety of that communication (over 100 documents) are all privileged for the reason Plaintiffs state. Only those text messages that are actually privileged should be withheld – not the entirety of the document. Please provide all non-privileged documents in the Bates range Bellard_0143-0280 by redacting the privileged communication and producing the remaining part of the responsive communication.

- In Plaintiff Speer's supplement document production, there are text messages with Shaun Tidal. However, Plaintiff Speer has not produced the communication where Shaun shared the collection notice and/or the bill that was allegedly not paid. Please provide that responsive document.



**FOLEY**

FOLEY & LARDNER LLP

February 23, 2023
Page 3

- In your February 21, 2023 letter, Plaintiffs take the position that Plaintiff Speer's religious notes and/or journals are "personal and private." However, Plaintiffs have agreed to produce such documents as to Plaintiff Bellard. Plaintiffs cannot claim in one instance that it is not relevant to the case and on the other agree to produce such documents. Additionally, relevance is not the discovery burden at issue. These documents are responsive to Defendants' requests and (despite Plaintiffs' self-serving assertion that Plaintiffs disagree with Defendants' position), these documents should be produced as they are key to an element of Plaintiffs' cause of action.

- Defendants have yet to see Messick_0346-0347 uploaded.

Please produce all requested, non-privileged Documents and Communications (as defined in our discovery requests) on or before 1:00 p.m. CST on February 24, 2023, or Defendants will file a motion to compel and seek the court's intervention.

Sincerely,

*/s/ Brooke C. Bahlinger*

Brooke C. Bahlinger

BCB:



**ATTORNEYS AT LAW**

2021 MCKINNEY AVENUE, SUITE 1600
DALLAS, TX  75201-3340
214.999.3000 TEL
214.999.4667 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
214.999.4262
choffman@foley.com

CLIENT/MATTER NUMBER
642631-0010

March 13, 2023

<u>**Via E-Mail**</u>
Kenneth A. Klukowski
Shaerr Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 787-1060
Facsimile: (202) 787-0136
kklukowski@shaerr-jaffe.com

    Re: *Bellard, et al. v. The University of Texas MD Anderson Cancer*
       *Center, et al.* Case No. 3:22-cv-88, Letter Regarding Plaintiffs'
       Document Production and Privilege Assertions

Mr. Klukowski:

  This is regarding Plaintiffs' recent production, received on March 8, 2023, and to the updated privilege log that accompanied it. Defendants hereby request a completely unredacted version of the Telegram chat thread titled "MDA Fight Back Chat," ("the Telegram Chat" or "the Chat") showing both the content of the redacted messages and the account names of all Chat participants, from inception through the present. Moreover, Defendants reiterate their requests for all other responsive, non-privileged documents.

  Plaintiffs' withholding of information within the Telegram Chat based on the First Amendment is entirely misplaced and misguided.  The First Amendment privilege is qualified privilege, is applied sparingly, and clearly does not extend to either the account names of the participants or the content in the Telegram Chat. *See, e.g.*, *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020) (explaining that associational privilege is limited and "is interpreted narrowly so as to apply only where necessary to achieve its purpose."). Because a conversation merely touches on "a matter of public concern" does not mean that a party may withhold that conversation under the guise of privilege. Rather, "the party claiming a First Amendment privilege in an objection to a discovery request bears the burden to make a prima facie showing of the privilege's applicability." *In re Motor Fuel Sales Practices Litig.* 641 F.3d 470, 488 (10th Cir. 2011).

  Plaintiffs have not and cannot make any showing that the First Amendment applies to the Telegram Chat.  To establish a prima facie case of privilege in the associational rights context, a party must provide much more than a conclusory assertion that privilege applies. In fact, the party asserting the privilege must provide a "*specific explanation*" as to how complying with the discovery request will hinder the exercise of associational rights. *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d

AUSTIN   DETROIT    MEXICO CITY  SACRAMENTO   TALLAHASSEE
BOSTON   HOUSTON   MIAMI     SALT LAKE CITY  TAMPA
CHICAGO   JACKSONVILLE  MILWAUKEE  SAN DIEGO    WASHINGTON, D.C.
DALLAS   LOS ANGELES  NEW YORK   SAN FRANCISCO  BRUSSELS
DENVER   MADISON    ORLANDO    SILICON VALLEY  TOKYO

4889-8319-6246.5



**FOLEY & LARDNER LLP**

March 13, 2023
Page 2

1339, 1355 (2d Cir. 1989) (emphasis added); *see also Motor Fuel Sales Practices*, 641 F.3d at 489–90; *La Union Del Pueblo Entero v. Abbott,* No. SA-21-CV-00844-XR, 2022 WL 17574079, at * 9 (W.D. Tex. Dec. 9, 2022). "The Court will not presume that a protected associational relationship exists between a party and every other person or entity with whom they share common beliefs or goals." *La Union Del Pueblo Entero*, 2022 WL 17574079, at * 8.

Consistent with precedent, and given that Plaintiffs have not provided a specific explanation as to how complying with Defendants' discovery requests will purportedly infringe upon the exercise of associational rights, Defendants request that Plaintiffs provide an **unredacted** copy of the Telegram Chat that includes the messages in the Chat and the account names of all Chat participants.

In addition, Defendants again repeat their requests for Dr. Speer's journal entries and notes concerning her religious faith. In light of Plaintiffs' line of questioning during the deposition of Dr. Kowalski on March 8, 2023, pertaining to the sincerity of Plaintiffs' religious beliefs, these items are obviously discoverable and must be produced.

Defendants also maintain that any and all documents and communications pertaining to the dinner and/or party at Dr. Katy French's house are relevant and responsive to Defendants requests. Accordingly, Defendants affirm their request for production as to these materials.

If Defendants do not receive all responsive, non-privileged communications by 1:00 p.m. CDT on Friday, March 17, 2023, they will move forward with a motion to compel the contents of the Telegram Chat, Dr. Speer's journal entries/notes, and all documents communications regarding the dinner/party at Dr. French's house.

.

Sincerely,

*/s/ Carrie B. Hoffman*
Carrie B. Hoffman

CBH:BCB



March 17, 2023

***Via Electronic Mail***

Carrie Hoffman
Brooke C. Bahlinger
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
choffman@foley.com
bbahlinger@foley.com

      Re:    *Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et al.*

Dear Carrie and Brooke,

      This letter is in response to your March 13, 2023, letter regarding our production to you on March 8, the accompanying privilege log, Dr. Speer's personal prayer journal, and our firm's consultation with Dr. French, who was seeking legal representation as discussed during her deposition.

*First Amendment Privilege for Telegram Chat*

      The Telegram chat involved between 25 and 30 employees of MD Anderson—an agency and political subdivision of the State of Texas—discussing Defendants' COVID-19 vaccine mandate. Although we believe our clients' comments are subject to protection under the First Amendment, we provided anything they posted in the chat. The comments of others, including the identity of the others (many joined under pseudonyms and were unknown to our clients) are irrelevant to any issues in this case. Further, the First Amendment protects their rights to free association and speech in this context because Defendants are simultaneously their employer and also state actors. "The First Amendment protects against compelled disclosure of groups organized around political, economic, cultural, or religious issues." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460–62 (1957). Disclosing the names and speech of nonparties to this case would chill protected speech and disincline other individuals to associate with our clients, which is sufficient to assert First Amendment rights here. *See Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383–84 (2021). Indeed, employees would be far less inclined to even talk with our clients about these issues if they believed their comments could be compelled in this litigation and their association with our clients could make them targets of their state employer.

      Additionally, Defendants have not demonstrated why disclosing the names or words of these nonparties is necessary for assessing any element of any claim asserted by Drs. Bellard, Messick, and Speer against the Defendants in this lawsuit. Without such a showing, this demand from a state actor

Carrie Hoffman
Brooke C. Bahlinger
March 17, 2023

raises sufficient First Amendment concerns to warrant the non-disclosure of the rest of a chat that was started by someone who is not a party to this litigation.

*Dr. Speer's Personal Prayer Journal*

We stand by our prior assertion that Dr. Speer's journal will not be produced.  The journal is comprised of handwritten notes of Dr. Speer's private prayers and was created with the intention that the journal remain private.  Her private prayers are irrelevant to any issue in this case.  At no time did Defendants question Dr. Speer's sincerity with regard to her expressed religious beliefs.  Indeed, Defendants' policy clearly states that any decision on a request for a religious exemption from the COVID-19 Vaccine Mandate would be made solely on the information submitted with the request.  Defendants' request for Dr. Speer's private prayer journal is irrelevant, overly broad, oppressive, an unwarranted invasion of privacy, and treads upon dangerous ground because prayer is an act of religious worship protected by both the Free Speech and Free Exercise Clauses.

*Attorney-Client Privilege*

As discussed during Dr. French's deposition and my later conversation with Jessica, Drs. Bellard, Messick, Speer, and French called me seeking legal advice after apparently having dinner together.  While Dr. French discussed her conversation with Drs. Bellard, Speer, and Messick during their meal, she did not discuss her conversation with me after the meal for the purpose of seeking legal representation.  Her attorney properly objected to her providing any testimony regarding her conversation with me, thus making it unnecessary for me to make the same objection on her behalf or on behalf of my clients.

Attorney-client privilege extends to preliminary communications with a lawyer even when the potential client later "declined representation."  *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992).  It is beyond debate that "communications made in the course of preliminary discussions with a view to employing the lawyer are privileged though employment is not … accepted."  *McCormick on Evidence* § 88 (3d ed. 1984).  This is in part because "[n]o person could ever safely consult an attorney for the first time … if the privilege depended on the chance of whether the attorney after hearing the statement of facts decided to accept employment or decline it.  No less may be said for persons who consult an attorney together as a group with common interests seeking common representation."  *In re Auclair*, 961 F.2d at 69 (cleaned up).  That is all the more true here, where three of the four persons in such a group consultation subsequently retained our firm.

Regarding your request for documents from that evening, our clients have no documents, and in any event, any documents that record my conversation with the four of them is protected from disclosure by the attorney-client privilege.  Accordingly, we object to Dr. French providing any documents she may have regarding her conversation with me.

Carrie Hoffman
Brooke C. Bahlinger
March 17, 2023

   We continue to look forward to hearing from you regarding the addressed in our February 27, 2023 letter and other previous items that require your attention.

        Sincerely,

        */s/ Kenneth A. Klukowski*

        Kenneth A. Klukowski

cc via electronic mail:

Jessica Glatzer Mason, Foley & Lardner LLP
jmason@foley.com

Exhibit C



CM

6:57

**MDA Fight Back Chat**
27 members

The APPs and all staff think I'm a conspiracy theorist.

November 29, 2021

3  8:38 PM

**Craig Messick**

I just find the whole thing more than odd or coincidental. It's planned and the science is overwhelming: there is no 3 year safety and efficacy data, we shouldn't even be here!!!

8:39 PM

8:40 PM

This week will be an emotional roller coaster. Saturday is my last day. Will be painful.

8:41 PM

CONFIDENTIAL
SPEER_2768



CONFIDENTIAL
SPEER_2769



CONFIDENTIAL
SPEER_2770



6:59

< 4981

**MDA Fight Back Chat**
26 members

M

November 30, 2021

**Bobby Bellara**
Hallelujah!!! Prayers answered!!!
Ready to celebrate this victory!
Looking forward to MDAs
acknowledgment!                    6:14 PM

**Craig Messick**
They won't. I'll be surprised if it
comes out before Friday at 5   6:19 PM

**Deleted Account**

**Deleted Account**

Message

CONFIDENTIAL
SPEER_2771



CONFIDENTIAL
SPEER_2772

Exhibit D

KATHERINE E. FRENCH-BLOOM, M.D.  -  March 09, 2023

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

BOBBY BELLARD, et al.,                §

    Plaintiffs,                      §

VS.                                   §   CASE NO. 3:22-cv-00088

THE UNIVERSITY OF TEXAS               §
MD ANDERSON CANCER CENTER,            §
et al.,                               §

    Defendants.                      §


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
    DEPOSITION OF KATHERINE E. FRENCH-BLOOM, M.D.
                MARCH 9, 2023
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


    DEPOSITION OF KATHERINE E. FRENCH-BLOOM, M.D.,

produced as a witness at the instance of DEFENDANTS, and

duly sworn, was taken in the above-styled and numbered

cause on the 9th day of March, 2023, from 3:58 p.m. to

6:58 p.m., before LORI A. BELVIN, CSR, and Notary Public

in and for the State of Texas, reported by stenographic

and Zoom Video Conference means, at the Law Offices of

Foley Lardner, LLP, 1000 Louisiana Street, Suite 2000,

Houston, Texas, pursuant to the Federal Rules of Civil

Procedure.

                 -   -   -   -   -

KATHERINE E. FRENCH-BLOOM, M.D.  -  March 09, 2023

1    Q.  Were there any responsive documents?

2    A.  Again, not that I found.

3    Q.  Did you search for text messages with Alicia

4  Kowalski on your work cellphone regarding the topics in

5  the subpoena?

6    A.  Yes.

7    Q.  Were there any responsive documents?

8    A.  Not that I found.

9    Q.  And how were you searching for these messages

10  with Alicia Kowalski on your personal device?

11    A.  Just her name.

12    Q.  So you would type in the search bar "Alicia

13  Kowalski"?

14    A.  I think I would just do "Alicia."

15    Q.  And you went through every text message thread

16  that popped up?

17    A.  Yeah.

18    Q.  And you did the same thing on your work

19  cellphone?

20    A.  Yes.  Yes, I believe I did, uh-huh.

21    Q.  Do you have Telegram?

22    A.  I don't currently have Telegram, no.

23    Q.  Did you previously have Telegram?

24    A.  Yes, I did.

25    Q.  When did you stop having Telegram?

1    A.   Like I said, when I got my new phone, I had not

2 accessed Telegram in a very long time and I removed that

3 and a couple of other applications from the device.

4    Q.   What motivated you to delete Telegram?

5    A.   Like I said, I hadn't accessed it in a very

6 long time.

7    Q.   What other apps did you delete because you

8 hadn't accessed them in a very long time?

9    A.   Oh, gosh, Signal, Facebook.  I honestly don't

10 know what else, but multiple.

11    Q.   Did you delete the app?  How did you remove it

12 from your --

13    A.   Yeah, just deleted the application from being

14 on, you know, the surface of the device.

15    Q.   Did you search through Telegram for responsive

16 documents?

17    A.   Like I said, I did not have the app at that

18 time.

19    Q.   If you downloaded the app again, would you

20 search for responsive documents?

21    A.   If I was able to.

22    Q.   I'm going to show the witness what's been

23 marked as Exhibit 2 [sic].

24            MS. BAHLINGER:  Counsel, my apologies --

25            MS. HOFFMAN:  I think you're on Exhibit 3.

1    Q.  Was it after the three Plaintiffs had filed

2  suit?

3    A.  No, I don't believe so.

4    Q.  So in 2021 then?

5    A.  No, I believe it would have been like early

6  2022.

7    Q.  Okay.  What did you-all discuss at dinner?

8    A.  I honestly don't recall the details of the

9  conversation.

10    Q.  Did you-all discuss anything related to the

11  COVID-19 policy at MD Anderson?

12    A.  I don't remember the specifics of that -- of

13  that conversation.  I'm sure it might have come up, but

14  I don't remember the details of the conversation.

15    Q.  Did you-all text about going to dinner and, you

16  know, the logistics of where you were meeting, where you

17  were going, those kinds of things?

18    A.  We might've.

19    Q.  Did you search for those messages?  I'm sorry,

20  those probably have been deleted.  Have those messages

21  been deleted?

22    A.  I don't know that they've been deleted, but I

23  definitely searched.  So I didn't find anything that had

24  to do with that.

25    Q.  Was it -- and you haven't gone to dinner with

KATHERINE E. FRENCH-BLOOM, M.D.  -  March 09, 2023

1   Dr. Messick besides the one time in early 2022, correct?

2       A.  Correct, yes.

3       Q.  Did he reach out to you to go to dinner?

4       A.  I don't recall.

5       Q.  Was there a purpose to the dinner?

6       A.  Not that I remember a specific purpose.

7       Q.  Were others invited to the dinner and just

8   didn't come?

9       A.  I'm sorry.  Who are we assuming is at the

10  dinner?

11      Q.  You told me you went to dinner with

12  Dr. Messick.

13      A.  But you're saying "they," so I'm assuming

14  you're talking about a group.

15      Q.  I'm just curious.  Did you invite others and

16  they just didn't come because you've told me it was just

17  the two of you?

18      A.  I actually didn't say that.

19      Q.  Okay.  Who else was at dinner?

20      A.  Bryce and Bobby.

21      Q.  So you went to dinner with the three Plaintiffs

22  in this case --

23      A.  Uh-huh.

24      Q.  -- in early 2022?

25      A.  Correct.

KATHERINE E. FRENCH-BLOOM, M.D.  -  March 09, 2023

1    Q.  Have you ever discussed masking with

2  Dr. Bellard?

3    A.  Not that I recall.

4    Q.  Is there anything that would refresh your

5  recollection?

6    A.  I don't know.

7    Q.  Did you ever discuss Dr. Bellard's religious

8  beliefs with him?

9    A.  Not that I remember.

10    Q.  Are you aware of Dr. Bellard's religious

11  beliefs?

12    A.  No.

13    Q.  Are you aware that Dr. Bellard submitted a

14  religious exemption request?

15    A.  Yes.

16    Q.  Did he tell you why?

17    A.  No.

18    Q.  Did he tell you anything about him applying for

19  a religious exemption request?

20    A.  Not that I remember.

21    Q.  Did you ever discuss COVID-19 testing with

22  Dr. Bellard?

23    A.  Not that I recall.

24    Q.  Dr. Bellard never notified you that he had been

25  selected for random testing?

KATHERINE E. FRENCH-BLOOM, M.D.  -  March 09, 2023

1       A.  Not that I remember.

2       Q.  Did you ask Dr. Bellard why he sought a

3  religious exemption?

4       A.  No.

5       Q.  Did you ever speak with -- sorry.  And I'm

6  saying it in the most broad sense "discussed, written,

7  texts, emails, in-person, remote, at everywhere."  Have

8  you ever discussed any of Dr. Bellard's complaints

9  regarding the MD Anderson COVID-19 policy?

10      A.  Yes.

11      Q.  When did you discuss that with Dr. Bellard?

12      A.  I don't recall specific dates.

13      Q.  Was it in the past year?

14      A.  Likely.

15      Q.  Was it in 2022?

16      A.  I don't know.

17      Q.  Was it this year?

18      A.  I don't recall this year.

19      Q.  Was it in 2021?

20      A.  It's possible.

21      Q.  How many times did you discuss Dr. Bellard's

22  complaints about MD Anderson's COVID-19 vaccination

23  policy with him?

24      A.  I don't know.

25      Q.  What were his complaints?

KATHERINE E. FRENCH-BLOOM, M.D.  -  March 09, 2023

1     A.  I don't know.

2     Q.  So you remember talking to him about it, but

3  you don't remember what he said?

4     A.  Is that a question?

5     Q.  Yes.

6     A.  Yes, I do not remember.

7     Q.  So you remember having conversations with

8  Dr. Bellard about his complaints about the COVID-19

9  vaccination policy, but you do not remember what he

10 said?

11    A.  Correct.

12    Q.  Do you remember any response you had?

13    A.  No, I do not.

14    Q.  Do you remember who was present when he was

15 complaining about the COVID-19 vaccination policy?

16    A.  No.

17    Q.  Where were you when he would discuss his

18 complaints about the COVID-19 vaccination policy with

19 you?

20    A.  I -- I don't know.

21    Q.  What is impeding your memory as to what he said

22 about his complaints?

23    A.  I really just don't recall.

24    Q.  Do you recall generally what he said?

25    A.  No.

KATHERINE E. FRENCH-BLOOM, M.D.  -  March 09, 2023

1     Q.  He just said "I have a complaint about the
2  COVID" -- what did he say to you?
3     A.  I don't recall.
4     Q.  How do you know he had a complaint about the
5  policy then?
6     A.  I don't know.
7     Q.  So you don't know if Dr. Bellard has any
8  complaints about the COVID-19 vaccination policy?
9     A.  I don't.
10     Q.  So, then, why did you just testify that you do
11  know that you have had that discussion with him?
12     A.  I don't know that I said that.
13     Q.  You did.  I asked you "Have you ever had
14  discussions with Dr. Bellard about complaints he has
15  regarding COVID-19 vaccination policy at MD Anderson"
16  and your answer was "Yes."  I've been trying to get into
17  the details with you.  How do you know --
18     A.  I said --
19     Q.  -- that he had complaints?
20     A.  I think it would only be in relationship again,
21  as I said, with Bryce and Craig regarding his religious
22  exemption and his desire for a religious exemption.
23     Q.  So his complaints were related to his religious
24  exemption requests?
25     A.  Yes.

KATHERINE E. FRENCH-BLOOM, M.D.  -  March 09, 2023

1      Q.  And so when you said "I don't know earlier,"
2  you were lying?
3      A.  I don't believe so.
4      Q.  So what did he say that he -- what did he
5  complain about the religious requests?
6      A.  That he had a complaint with the religious
7  exemption.  I don't know.  I don't remember specifics.
8      Q.  Did you respond to anything he said?
9      A.  Not that I recall.
10      Q.  Did anyone else respond to anything he said?
11      A.  I don't know.  I don't recall that.
12      Q.  Did anyone else voice complaints about
13  religious exemption requests in these conversations that
14  you were having with Dr. Bellard?
15      A.  Not that I remember.
16      Q.  Was he complaining about being denied?
17      A.  I don't recall that.
18      Q.  What was he complaining about?
19      A.  I don't recall.
20      Q.  Who besides -- you've indicated that Dr. Speer
21  and Dr. Messick were present for these conversations
22  with Dr. Bellard about complaints regarding the COVID-19
23  vaccination policy at MD Anderson, correct?
24      A.  I'm confused about that question.
25      Q.  Who was present when you spoke with Dr. Bellard

KATHERINE E. FRENCH-BLOOM, M.D.  -  March 09, 2023

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE SOUTHERN DISTRICT OF TEXAS

3                  GALVESTON DIVISION

4  BOBBY BELLARD, et al.,        §

5       Plaintiffs,              §

6  VS.                          §     CASE NO. 3:22-cv-00088

7  THE UNIVERSITY OF TEXAS       §
   MD ANDERSON CANCER CENTER,    §
8  et al.,                       §

9       Defendants.             §

10

11  **********************************************************
                    REPORTER'S CERTIFICATION
12       DEPOSITION OF KATHERINE E. FRENCH-BLOOM, M.D.
                       MARCH 9, 2023
13  **********************************************************

14

15       I, Lori A. Belvin, a Certified Shorthand

16  Reporter and Notary Public in and for the State of

17  Texas, hereby certify to the following:

18       That the witness, KATHERINE E. FRENCH-BLOOM, M.D.,

19  was duly sworn by the officer and that the transcript of

20  the oral deposition is a true record of the testimony

21  given by the witness;

22       That the original deposition was delivered to

23  MS. CARRIE B. HOFFMAN/MS. BROOKE C. BAHLINGER.

24       That a copy of this certificate was served on all

25  parties and/or the witness shown herein on

                  LORI  A.  BELVIN  &  ASSOCIATES
                         (713) 626-2629

1  _____.

2        I further certify that pursuant to FRCP Rule

3  30(f)(1) that the signature of the deponent:

4        _X___ was requested by the deponent or a party

5  before the completion of the deposition and that the

6  signature is to be before any notary public and returned

7  within 30 days from date of receipt of the transcript.

8  If returned, the attached Changes and Signature Page

9  contains any changes and the reasons therefore:

10        ____ was not requested by the deponent or a

11  party before the completion of the deposition.

12        I further certify that I am neither counsel for,

13  related to, nor employed by any of the parties or

14  attorneys in the action in which this proceeding was

15  taken, and further that I am not financially or

16  otherwise interested in the outcome of the action.

17        Certified to by me on this, the 14th day of

18  March, 2023.

19

20  _____

21  Lori A. Belvin, CSR No. 2572
    LORI A. BELVIN & ASSOCIATES
    Firm Registration No. 584
22  Expiration Date:  01-31-2024
    1225 North Loop West, Suite 327
23  Houston, Texas  77008
    Ph. No.: (713) 626-2629

24

25

# EXHIBIT E

## AFFIDAVIT OF KATY FRENCH-BLOOM, MD

STATE OF TEXAS   )
                  ) ss.
County of Harris     )

I, KATY FRENCH-BLOOM, MD, hereby depose and say as follows:

1.     At the times relevant to the matters set forth in this affidavit I have been employed by The University of Texas MD Anderson Cancer Center ("MD Anderson") in the State of Texas, including as an anesthesiologist and professor.

2.     I was employed by MD Anderson during the Covid-19 pandemic, and, in the course of my employment at that time, MD Anderson required that I either take the Covid-19 vaccine (generally, the "MD Anderson Vaccine Mandate"), qualify for a religious exemption or medical exemption under the program administered by MD Anderson or face termination or non-renewal of my employment with MD Anderson.

3.     In the course of deciding how to respond to the MD Anderson Vaccine Mandate in the first instance, deciding to apply for the religious exemption, deciding to reapply for the religious exemption after being rejected twice by MD Anderson and what to do after having been granted the religious exemption on or about the last day of the MD Anderson Vaccine Mandate, I discussed with others, including others employed by MD Anderson, my personal feelings, beliefs and convictions, as well as my anticipated career decisions as I faced termination by MD Anderson, as well as listened to and responded to the communications from others about their feelings, beliefs, convictions and anticipated career decisions.

4.     Ultimately, I made the decision to not pursue legal action against MD Anderson despite believing MD Anderson had violated my constitutional rights and that MD Anderson may in the future retaliate against me for having refused to get the Covid-19 vaccine.  In significant part, my decision to not pursue legal action against MD Anderson was out of a desire to not exacerbate what I believed was already a circumstance that could result in retaliation against me by MD Anderson, as well as to avoid having to disclose the nature of my aforementioned communications with others, including my communications with other MD Anderson employees.

5.     On March 1, 2023, outside counsel for MD Anderson emailed to my counsel a subpoena for documents and to appear for a deposition on March 9, 2023.  On March 3, 2023, my counsel confirmed with outside counsel to MD Anderson my voluntary acceptance of the subpoena and my agreement to attend the deposition and search for the documents requested in the subpoena.  I have voluntarily complied with the subpoena to the best of my ability under the circumstances.

6.     On March 9, 2023, I was deposed under oath for several hours by outside counsel for MD Anderson.  The overwhelming majority of the deposition focused on my aforementioned

communications with others, including, in particular, my communications with other MD Anderson employees about the MD Anderson Vaccine Mandate. The deposition proved to be an incredibly unpleasant and offensive experience due to, among other circumstances, the refusal of outside counsel for MD Anderson to cease asking questions about my communications with legal counsel with respect to which my counsel had objected on the grounds of those communications being protected by the attorney-client privilege, as well as outside counsel for MD Anderson becoming noticeably and repeatedly aggressive and unprofessional toward me despite my counsel repeatedly requesting the deposition be conducted in a respectful and professional manner that did not include yelling, aggressive repetition of questions that had been answered and accusations and insinuations of me lying.

7.      During the deposition, MD Anderson's counsel went so far as to refuse my counsel's repeated requests for a recess to discuss my prior communications with other legal counsel about the matters that were the subject of questions asked of me at the deposition, repeatedly call me a liar and asking me about my conversations with my husband, as well as to ask innumerable questions about (a) dinner parties I hosted at my home, (b) my intentions to seek employment outside of MD Anderson and financial details related to the same, (c) my tenure, qualifications and positions at MD Anderson, (d) my knowledge of the intentions of other MD Anderson employees, (e) what I knew about the religious beliefs of other MD Anderson employees, (f) what I knew about religious exemptions filed by other MD Anderson employees, (g) the origin of referrals of names of legal counsel to assist other MD Anderson employees relative to the MD Anderson Vaccine Mandate, and (h) when and why I ceased participating in communications with others, including MD Anderson employees, about the MD Anderson Vaccine Mandate, among other questions I feel were inappropriate and intrusive.

8.      Despite my having voluntarily complied to the best of my ability under the circumstances, including having agreed to attend the deposition with little more than a week's notice and having gone to great lengths to search and provide to outside counsel for MD Anderson the information requested in the subpoena, MD Anderson has requested I continue to search for documents and has threatened to file a motion to compel against me if I don't immediately search for and provide additional information pursuant to the subpoena, including, among other communications, what I understand to be certain communications with other MD Anderson employees in which I may have been a participant or copied.

9.      I have concluded that it is not in my best interests to communicate with any MD Anderson employees about my employment with MD Anderson, the MD Anderson Vaccine Mandate or my religious beliefs or my personal life in general as it may relate to my employment at MD Anderson. In substantial part, my conclusion is based on my sincere belief that MD Anderson and its outside counsel were intent on making it clear to me during the deposition and thereafter that (a) MD Anderson was not pleased with my having communicated with other MD Anderson employees about the MD Anderson Vaccine Mandate, the religious exemption, my intentions relative to employment outside of MD Anderson and related matters; (b) MD Anderson likely will take my actions into consideration relative to future advancement and employment opportunities at MD Anderson; (c) MD Anderson desires and expects that I not engage in the same or similar communications in the future while employed at MD Anderson; and (d) MD Anderson perceives my actions relative to the MD Anderson Vaccine Mandate as indicative of my being adversarial toward MD Anderson, which is not the case.

2

10.     My participation in the deposition and the actions of outside counsel for MD Anderson thereafter have left me (a) further traumatized by the actions of MD Anderson relative to the MD Anderson Vaccine Mandate, (b) in fear of expressing my religious beliefs and opinions as they may relate to my employment with MD Anderson, (c) deeply concerned about my potential for future employment and advancement at MD Anderson, (d) feeling disrespected and threatened by MD Anderson and its outside counsel, and (e) feeling retaliated against by MD Anderson for having communicated with others about the MD Anderson Vaccine Mandate and for insisting that MD Anderson recognize my religious beliefs as qualifying me for exemption from the MD Anderson Vaccine Mandate.

Further Affiant sayeth not.

DATED this 24th day of March, 2023.



KATY FRENCH-BLOOM, MD

# EXHIBIT F



March 17, 2023

**Via Electronic Mail**

Carrie Hoffman
Brooke C. Bahlinger
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
choffman@foley.com
bbahlinger@foley.com

      Re:    *Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et al.*

Dear Carrie and Brooke,

      This letter is in response to your March 13, 2023, letter regarding our production to you on March 8, the accompanying privilege log, Dr. Speer's personal prayer journal, and our firm's consultation with Dr. French, who was seeking legal representation as discussed during her deposition.

*First Amendment Privilege for Telegram Chat*

      The Telegram chat involved between 25 and 30 employees of MD Anderson—an agency and political subdivision of the State of Texas—discussing Defendants' COVID-19 vaccine mandate. Although we believe our clients' comments are subject to protection under the First Amendment, we provided anything they posted in the chat. The comments of others, including the identity of the others (many joined under pseudonyms and were unknown to our clients) are irrelevant to any issues in this case. Further, the First Amendment protects their rights to free association and speech in this context because Defendants are simultaneously their employer and also state actors. "The First Amendment protects against compelled disclosure of groups organized around political, economic, cultural, or religious issues." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460–62 (1957). Disclosing the names and speech of nonparties to this case would chill protected speech and disincline other individuals to associate with our clients, which is sufficient to assert First Amendment rights here. *See Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383–84 (2021). Indeed, employees would be far less inclined to even talk with our clients about these issues if they believed their comments could be compelled in this litigation and their association with our clients could make them targets of their state employer.

      Additionally, Defendants have not demonstrated why disclosing the names or words of these nonparties is necessary for assessing any element of any claim asserted by Drs. Bellard, Messick, and Speer against the Defendants in this lawsuit. Without such a showing, this demand from a state actor

Carrie Hoffman
Brooke C. Bahlinger
March 17, 2023

raises sufficient First Amendment concerns to warrant the non-disclosure of the rest of a chat that was started by someone who is not a party to this litigation.

*Dr. Speer's Personal Prayer Journal*

We stand by our prior assertion that Dr. Speer's journal will not be produced.  The journal is comprised of handwritten notes of Dr. Speer's private prayers and was created with the intention that the journal remain private.  Her private prayers are irrelevant to any issue in this case.  At no time did Defendants question Dr. Speer's sincerity with regard to her expressed religious beliefs.  Indeed, Defendants' policy clearly states that any decision on a request for a religious exemption from the COVID-19 Vaccine Mandate would be made solely on the information submitted with the request.  Defendants' request for Dr. Speer's private prayer journal is irrelevant, overly broad, oppressive, an unwarranted invasion of privacy, and treads upon dangerous ground because prayer is an act of religious worship protected by both the Free Speech and Free Exercise Clauses.

*Attorney-Client Privilege*

As discussed during Dr. French's deposition and my later conversation with Jessica, Drs. Bellard, Messick, Speer, and French called me seeking legal advice after apparently having dinner together.  While Dr. French discussed her conversation with Drs. Bellard, Speer, and Messick during their meal, she did not discuss her conversation with me after the meal for the purpose of seeking legal representation.  Her attorney properly objected to her providing any testimony regarding her conversation with me, thus making it unnecessary for me to make the same objection on her behalf or on behalf of my clients.

Attorney-client privilege extends to preliminary communications with a lawyer even when the potential client later "declined representation."  *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992).  It is beyond debate that "communications made in the course of preliminary discussions with a view to employing the lawyer are privileged though employment is not … accepted."  *McCormick on Evidence* § 88 (3d ed. 1984).  This is in part because "[n]o person could ever safely consult an attorney for the first time … if the privilege depended on the chance of whether the attorney after hearing the statement of facts decided to accept employment or decline it.  No less may be said for persons who consult an attorney together as a group with common interests seeking common representation."  *In re Auclair*, 961 F.2d at 69 (cleaned up).  That is all the more true here, where three of the four persons in such a group consultation subsequently retained our firm.

Regarding your request for documents from that evening, our clients have no documents, and in any event, any documents that record my conversation with the four of them is protected from disclosure by the attorney-client privilege.  Accordingly, we object to Dr. French providing any documents she may have regarding her conversation with me.

Carrie Hoffman
Brooke C. Bahlinger
March 17, 2023

      We continue to look forward to hearing from you regarding the addressed in our February 27, 2023 letter and other previous items that require your attention.

                                        Sincerely,

                                        */s/ Kenneth A. Klukowski*

                                        Kenneth A. Klukowski

cc via electronic mail:

Jessica Glatzer Mason, Foley & Lardner LLP
jmason@foley.com

# EXHIBIT G



March 28, 2023

**Via Electronic Mail**

Carrie Hoffman
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
choffman@foley.com

   Re: *Bellard, et al. v. The University of Texas MD Anderson Cancer Center, et al.*

Dear Carrie,

   While we are working through various other discovery issues, this letter is to inform you that should Defendants continue to pursue records from third-party witnesses, Plaintiffs will seek a protective order to protect against the disclosure of materials protected by First Amendment privilege.

   Plaintiffs have asserted First Amendment privilege against our disclosing the identities and comments of nonparties in a group chat of approximately 30 MD Anderson employees.  In response to your March 13, 2023 letter seeking that information, I responded on March 17, explaining that we had disclosed all the comments posted by each of our clients in that chat, but that disclosing the names and comments of their MD Anderson coworkers who were criticizing or commenting on Defendants' actions and policy would chill protected speech.  Accordingly, those communications are shielded by the First Amendment.

   We are prepared to oppose any motion to compel that Defendants would file seeking that information from Plaintiffs or nonparties, and proactively prepared to seek a protective order from any further demands being placed on those witnesses.  It is our understanding that Defendants have threatened to file a motion to compel Dr. Katy French to provide the unredacted comments of all those who participated in the chat.  Prior to drafting the joint letter required by the Galviston Rules of Practice prior to the submission of any discovery motion—including motions to compel or for a protective order—we wanted to ascertain whether that is indeed your intention.  If it is, I will promptly send you a draft of a joint letter regarding a motion for protective order to prohibit the production of that material.

   I look forward to your reply.  Thank you for your attention in this matter.

        Sincerely,

        */s/ Kenneth A. Klukowski*

        Kenneth A. Klukowski

SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
www.schaerr-jaffe.com

Carrie Hoffman
March 28, 2023


cc via electronic mail:
Jessica Glatzer Mason, Foley & Lardner LLP
jmason@foley.com
Brooke C. Bahlinger, Foley & Lardner LLP
bbahlinger@foley.com